**PINEWOOD REALTY LIMITED PARTNERSHIP**

v.

**The UNITED STATES.**

No. 419–78.

United States Court of Claims.

March 19, 1980.

Douglas W. Anderson, Scarsdale, N. Y., atty. of record, for plaintiff.

James T. Draude, Washington, D. C., with whom was Asst. Atty. Gen. James W. Moorman, Washington, D. C., for defendant Jose N. Uranga, Washington, D. C., of counsel.

Before DAVIS, KASHIWA and SMITH, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

EDWARD S. SMITH, Judge:

Plaintiff, Pinewood Realty Limited Partnership,[1] an organization existing under the laws of the State of New York, asserts claims against defendant for breach of contract. Both parties have filed motions for summary judgment, on which we have heard oral argument.

---

1. Hereinafter "Pinewood Realty."

On May 18, 1977, plaintiff's predecessor in interest, Drake Realty Associates (Drake), submitted, in writing, the high bid to purchase Pinewood Apartments [2] of Metairie, Louisiana, from the U.S. Department of Housing and Urban Development (HUD), which offer was accepted on May 24, 1977. On June 16, 1977, Drake requested authority to assign the contract to plaintiff, which assignment took place on July 12, 1977, after appropriate consent thereto was granted on July 5. Prior to the assignment on June 28, 1977, a suit was filed by one Bradley in the United States District Court for the Eastern District of Louisiana seeking to enjoin the sale of Pinewood Apartments by HUD, and HUD sent the purchaser a copy of the Bradley complaint on July 5, 1977. On July 7, 1977, HUD sent a letter to Drake confirming a "postponement" of the original closing date from July 25, 1977, to August 24, 1977, in which Drake concurred.[3] A notice of lis pendens was filed against the property on July 11, 1977, because of the Bradley suit. On August 16, 1977, HUD confirmed by letter a further "postponement" of closing until September 26, 1977, on which Pinewood Realty noted its acceptance.

On September 23, 1977, HUD again suggested that the closing date be "postponed" until October 26, 1977. On September 26, 1977, Pinewood Realty's attorney, by letter, consented to this final "extension" but stated expressly that its consent would not act to vitiate its rights to damages and lost profits incurred by Pinewood Realty as a result of the delays from the original closing date until actual closing. On October 4, 1977, HUD responded by informing plaintiff that it was accepting the "extension" but not admitting the liability of the Government for damages or lost profits due to the delays. On October 17, 1977, HUD reduced the purchase price by $9,000 for maintenance repair work required on the project.

On October 25, 1977, the district court dismissed the Bradley suit [4] and closing was concluded on October 27, 1977, in the New Orleans offices of HUD.

On November 14, 1977, plaintiff filed an "administrative notice of claim" against defendant for contract damages. On December 15, 1977, plaintiff was notified that HUD had no administrative procedure to process Pinewood Realty's administrative claim and that defendant considered that plaintiff had no right to damages.

This suit followed, in which plaintiff alleges that it was ready, willing, and able to perform the terms of the contract of sale on or before the original closing date and that defendant caused plaintiff harm by not closing on the original date set, July 25, 1977. Plaintiff seeks damages for delay, lost profits, and additional expenses incurred. For reasons stated below, we hold that plaintiff is entitled to a partial recovery on its claims.

## I.

The threshold question presented to us is whether we should apply federal or Louisiana law in determining the rights of the parties to this contract. Plaintiff argues that since the contract deals with the sale of land, and since the place designated for the execution and performance of the contract is Louisiana, the law of that state should apply. If the resolution of this dispute were to affect the underlying property system in Louisiana, that state might have a significant interest in this contract, but that is not the case, and we reject this argument by plaintiff and apply federal law. There is no question in the present case as to the extent of the property interest conveyed by HUD to plaintiff, but merely as to the rights and obligations of the parties under a contract with the feder-

2. HUD acquired the complex, formerly known as Chauteau des Saints, on February 11, 1976, pursuant to foreclosure.

3. It should be noted that defendant referred to the changing of the closing dates as "postpone-

ments," while plaintiff referred to them as "extensions."

4. The dismissal was upheld on immediate appeal.

al government. Such contracts are normally governed by a uniform federal law and not by the particular laws of the states where they are made or performed, except in most unusual circumstances.[5]

## II.

Plaintiff bases its claims on the following clause of the contract of purchase:

9. Time is of the essence of this contract. The sale shall be closed within 60 days following execution hereof by the Seller at the offices of the Seller, or at such other time and place as may be agreed on by the parties in writing. Should the Purchaser fail or refuse to perform his part of the contract promptly at the time or in the manner herein specified, the earnest money deposited herewith shall, at the option of the Seller, be retained as liquidated damages.

■ It is true, as plaintiff claims, that the contract specifically provides that time is of the essence, but it is equally apparent that the first two "extensions" or "postponements" restated the time of closing and were agreed to in writing by the parties. This, too, was in accordance with a specific provision in clause 9 of the contract. Thus, plaintiff is hardly in a position to claim a breach arising out of these two postponements on the basis that time was of the essence, when such modifications were a result of mutual consent.

■ Plaintiff's claim for damages would fail even if the two postponements had not formally been agreed to. As we said in *DeVito* : [6]

Time is of the essence in any contract containing fixed dates for performance. When a due date has passed and the contract has not been terminated for default within a reasonable time, *the inference is created that time is no longer of the essence so long as the constructive election not to terminate continues and the contractor proceeds with performance.* * * * [Emphasis supplied.]

■ If plaintiff truly thought these postponements were actual breaches of the contract, under federal law plaintiff had a duty to call upon HUD to meet its obligations. Without such an assertion, plaintiff lost its right to rescission and cannot deny the existence of the contract.[7] It is inconsistent for plaintiff to claim that "[t]ime is of the essence" in this contract and repeatedly to allow HUD to postpone the closing date. The purchaser's acquiescence in the first two extensions could only be seen as a waiver of its right to terminate the contract. The purchaser also failed during the first two extensions to make any express reservation of its "right" to damages. Considering the language of clause 9 of the contract, and in the absence of contrary evidence in the record, it can only be inferred that the first two postponements resulted from the mutual agreement of the parties pursuant to the contract.

## III.

The third postponement or extension is a different matter. By agreement in writing the closing date had been reset for September 26, 1977. In responding to HUD's suggestion of a further 30-day postponement to October 26, 1977, plaintiff for the first time put HUD on notice that it was contemplating a suit for damages on the basis of the repeated "extensions" of the closing date. If plaintiff had any earlier subjective, unexpressed intentions in this respect they were

5. *Keydata Corp. v. United States*, 205 Ct.Cl. 467, 482, 483, 504 F.2d 1115, 1123, 1124 (1974); *Groves v. United States*, 202 Ct.Cl. 660, 674 (1973); *Padbloc Co. v. United States*, 161 Ct.Cl. 369, 377 (1963). *See also United States v. County of Allegheny*, 322 U.S. 174, 182–83, 64 S.Ct. 908, 913–14, 88 L.Ed. 1209 (1944).

6. *DeVito v. United States*, 188 Ct.Cl. 979, 991, 413 F.2d 1147, 1154 (1969).

7. *Adler Constr. Co. v. United States*, 191 Ct.Cl. 607, 615, 423 F.2d 1362, 1366 (1970), *cert. denied*, 400 U.S. 993, 91 S.Ct. 461, 27 L.Ed.2d 441 (1971). This premise is also true under Louisiana law, *see Autrey v. Williams & Dunlap*, 343 F.2d 730, 736 (5th Cir. 1965).

not binding on HUD.[8] From the language in both a mailgram from Pinewood Realty to its attorney and a letter from the attorney to HUD it is clear that plaintiff conditioned acceptance of the last extension on the express reservation of rights for damages. It is equally clear that HUD accepted the extension but denied any liability.

In such circumstances, since the parties did not agree on the terms of a further extension, this condition to Pinewood Realty's assent to the last extension would suggest that clause 9 of the contract did not operate to extend the closing date from September 26. It cannot be said that both parties unconditionally agreed to an extension beyond the September deadline.

▮ Assuming that there was no agreement between the parties beyond their September 26, 1977, closing date, the fact that the closing date did not transpire until October 27, 1977, does not automatically end the contract. A breach of this nature would merely give the injured party the right to terminate.[9] If the injured party ignores the breach, and continues to perform, it has waived its right to terminate the contract, and has only retained its claim for damages for partial breach.[10]

In the instant case, Pinewood Realty consented to the last extension on the express condition that its consent in no way waived its right to sue for damages and lost profits. On October 4, 1977, Susan S. Jarvis, on behalf of HUD, notified Pinewood Realty that HUD's agreement to extend the closing date in no way recognized plaintiff's claim for damages or loss of profits. The closing date had been reset for October 26. Pinewood Realty, upon receipt of this letter, ignored the fact that defendant had not agreed to the extension of the closing date on the condition that plaintiff had stipulated as a prerequisite to its consent. Therefore, from plaintiff's perspective, defendant had breached the contract. Yet plaintiff ignored the breach and continued to keep its mortgagee in line, so as to comply with the all-cash requirement of the sale. As a result plaintiff retained only its claim for partial breach, evidenced by the express right to damages and lost profits set out in its letter to HUD accepting the last extension.

▮ From a different perspective, the same facts could be viewed in a different way. It is a general precept of federal contract law that:[11]

Those who enter a contract may take steps at any time after its execution to modify it. They may modify not only its substantive provisions but its prescribed procedures * * *.

It could be that plaintiff conditioned the last extension of the closing date on the reservation of its rights to damages for delay. Defendant accepted the extension but denied liability. From the circumstances, it might be postulated that plaintiff, in reserving its rights to damages, was attempting to modify the contract so as to allow for what it considered to be the unjustifiable delay of the Government. Under the terms of clause 9 of the contract, the inclusion of this reservation in plaintiff's acceptance of the last extension would have no meaning unless it was included by plaintiff to overcome the presumption of clause 9 that postponements of the closing date were by mutual consent. Under such an analysis, if there was to be a valid extension of the September closing date, it could only be inferred that defendant had to accept the condition precedent that plaintiff put upon its consent to a further extension. Therefore, under the interpretation first above, there was no valid postponement of the closing date after September 26, 1977, due to the inability of the parties to agree

**8.** *Kenneth Reed Constr. Corp. v. United States,* 201 Ct.Cl. 282, 291, 475 F.2d 583, 588 (1973).

**9.** *Cities Serv. Helex, Inc. v. United States,* 211 Ct.Cl. 222, 234, 543 F.2d 1306, 1313 (1976).

**10.** *Id.,* 211 Ct.Cl. at 234–35, 543 F.2d at 1313.

**11.** *General Dynamics Corp. v. United States,* 214 Ct.Cl. 607, 617, 558 F.2d 985, 990 (1977); *see also Langoma Indus., Inc. v. United States,* 135 F.Supp. 282, 285, 133 Ct.Cl. 248, 253 (1955).

on the consequences of such an "extension," and HUD's failure to close on that date was a breach. Under the alternative theory, the last "extension" between the parties was a modification of the contract.[12] Under either theory, the closing of the sale transpired after the appropriate closing date, thus raising a question of whether the Government is liable for the damages and lost profits that resulted after September 26, 1977.[13]

### IV.

It cannot be disputed that the delays in closing the sale of the Pinewood Apartments were a direct result of the *Bradley* suit. Generally a right to damages results from an unexcused breach on the part of one of the parties to fulfill its obligations under a contract.

 In the situation before us, defendant has been accused by plaintiff of inexcusable delays in delivering the deed to Pinewood Apartments. Yet any attempt by defendant to close the sale prior to resolution of the *Bradley* suit would at best have resulted in confusion. More likely, an unfavorable resolution of the suit against the Government could have resulted in liability on the part of defendant for damages due to a cancellation of the Pinewood Apartment sale. To proceed to closing any earlier would have constituted negligence on the part of defendant. In the circumstances, the Government cannot be held liable for these delays. As this court stated in *Edison Sault Electric Co.*:[14]

 * * * It is well settled where a claim is based upon an act of a third party not in privity with the United States, there can be no recovery against the Government. [Citations omitted.]

 For the United States to be liable for acts of a third party, the third party must, at the least, be an "agency or instrumentality of the United States acting within the scope of its authority in entering into the disputed agreement and thereby binding defendant as a principal to it." * * *

Therefore, plaintiff is not entitled to recover, for breach of contract, any damages on account of these unfortunate delays.

### V.

This case is a particularly troublesome one, especially in light of the fact that the delays in closing were not attributable to the conduct of either party. In fact, the delays in the closing date were a direct result of the *Bradley* suit.

In trying to ascertain what relief can be granted, the *Levin* case is worthy of particular note.[15] In that case, the Government made a contract to sell a war housing project to plaintiffs. The Government did not convey the property to the plaintiffs until some 7 months after what plaintiffs contended was the original closing date. Plaintiffs sued for damages resulting from the delay in conveyance.

The similarities between the present case and *Levin* are remarkable. In *Levin*, the Public Housing Authority wanted to sell an apartment complex for cash. The signed contract provided that up until the day of closing defendant would retain the rents and pay for the maintenance of the complex. In the present litigation, the Pinewood complex was sold for cash to plaintiff. The contract now in dispute had similar provisions for the apportionment of rents, taxes, and maintenance as in the *Levin* case.

The original closing date in the *Levin* case was September 30, 1947. The original

---

12. *See Bailey Specialized Bldgs., Inc. v. United States*, 186 Ct.Cl. 71, 79–80, 404 F.2d 355, 360 (1968).

13. It should be noted that the eventual closing of the contract took place on October 27, 1977. Even assuming the validity of the "last extension," defendant still breached the contract since the extension only lasted until October 26, 1977.

14. *Edison Sault Elec. Co. v. United States*, 213 Ct.Cl. 309, 321, 552 F.2d 326, 333 (1977).

15. *Levin v. United States*, 130 Ct.Cl. 398, 128 F.Supp. 144 (1955).

closing was delayed due to allegations that the sale was improper. Prior to the original closing date, plaintiffs requested an extension of the closing until the allegations of impropriety were resolved. The Levins made this request for fear that there might be a cloud on the title to the property that they were buying. The Public Housing Authority finally proffered the deed to plaintiffs on April 16, 1948. Plaintiffs said that they would accept the deed, but reserved their right to damages for the delay in closing from September 30, 1947. The deed was delivered on April 28, 1948.

In the instant case, the filing of the *Bradley* suit to enjoin the sale of the Pinewood Apartments and the filing of a *lis pendens* on July 12, 1977, were sufficient to raise the question whether there was a cloud on defendant's title. It was alleged in the *Bradley* suit that HUD had violated its own regulations in seeking to sell the Pinewood Apartments to the highest cash bidder. As in *Levin*, plaintiff agreed to proceed with the sale, but with express reservation that damages due to the delays were not to be waived by plaintiff's consent to continue performance.

In the suit in this court that followed the delivery of the deed to the Levins, plaintiffs argued that the Government was liable for damages, lost profits, and the like for the inexcusable delay in closing. The court, in resolving that earlier case, stated that, at the time of the original closing, a question existed as to whether the closing was legal. The court further stated that the desire of the Public Housing Authority to put off the transfer until the charges of impropriety were cleared up was quite natural.[16] The court went on to say:[17]

> * * * Ordinarily in the sale of real estate, it is not of great importance whether the deed is made on a certain day, or a week or sometimes a month later. The real ownership of the property has passed by the making of the contract, and if the formal passing of the title is

delayed, the interests of the parties can be adjusted according to their rights, under the contract and in equity. The plaintiffs say that in this case time was of the essence, because of the suits which were filed on the agreed closing date. Assuming that the filing of the suits before the transfer was made did change the situation materially, that would not mean that the parties had agreed that it was essential that the closing be on that date. It would mean only that an event had occurred on that date which had important consequences. That occurrence, for which the vendor was not responsible, would not make the vendor guilty of a breach of contract, and liable for all the consequences of the occurrence.

The court's analysis in *Levin* seems equally appropriate to the present case. The defendant cannot be blamed for the intervening delay in closing caused by the *Bradley* suit. As in *Levin*,[18] this court concludes that the suit attacking the sale would have been filed even if HUD had gone to closing on the original closing date. Assuming that the closing had occurred on schedule, an adverse decision in the *Bradley* suit would have resulted in making the contract of sale between HUD and Pinewood Realty a nullity. Prior to the resolution of the *Bradley* suit, Pinewood Realty at best would have received a deed accompanied by a cloud on title. The merchantability of the title would have been highly questionable prior to the lifting of the notice of *lis pendens*.

However, the contract of sale and the subsequent valid "extensions" establish that plaintiff had a right to the benefits of ownership from September 26, 1977. The contract stated that rents should accrue to the seller until the date of settlement and should accrue to the buyer thereafter. Nevertheless, the acquisition by plaintiff of the benefits of ownership should not depend on whether some stranger might prevent the closing of a sale for months by filing a frivolous suit against one of the parties.

**16.** *Id.*, 130 Ct.Cl. at 403, 128 F.Supp. at 147.

**17.** *Id.*, 130 Ct.Cl. at 404, 128 F.Supp. at 147–48.

**18.** *Id.*

Plaintiff in this case was the equitable owner of the property from September 26, 1977, and thus was entitled to the rents, less the costs, to the extent that the costs were reasonable, of maintaining the property and collecting the rents.[19]

Accordingly, defendant's motion for summary judgment is granted in part and denied in part; plaintiff's motion for summary judgment is granted in part and denied in part; and plaintiff is entitled to recover, for the period September 26 to October 27, 1977, the rents less the reasonable costs of maintenance of the property. The case is remanded to the trial division for computation of the recovery pursuant to Rule 131(c).

---

19. *Id.*, 130 Ct.Cl. at 405, 128 F.Supp. at 148.

Since the date of "constructive" delivery was September 26, 1977, there is no need to address the issue of damages for the defendant's breach by going to closing on the 27th of October or 1 day after the agreed upon closing.