**FAIRINGTON APARTMENTS OF LAFAYETTE, a limited partnership**

v.

**The UNITED STATES.**

No. 724–83C.

United States Claims Court.

March 26, 1985.

**648**

James W. Beatty, Indianapolis, Ind., attorney of record, for plaintiff; Landman & Beatty, Indianapolis, Ind., of counsel.

Sharon Y. Eubanks, Washington, D.C., with whom was Acting Asst. Atty. Gen.

Richard K. Willard, for defendant; David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, Washington, D.C., of counsel.

## OPINION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

In this suit, plaintiff contends that the government breached its contract to provide mortgage insurance of $3,085,500 for construction of an apartment project. The alleged breach stems from the Department of Housing and Urban Development (HUD) reducing the amount of the insurance to only $3,057,000. The government contends that the reduction was authorized by the terms of the contract, and that plaintiff consented to such reduction in return for HUD's approval of a change order in the construction.

The National Housing Act, 12 U.S.C. § 1701 et seq. (1982), created programs of mortgage insurance designed to promote the private development of different types of housing. This case involves mortgage insurance under 12 U.S.C. 1715*l* which authorizes insurance for moderate income housing facilities. Under this program, HUD provides insurance to lending institutions which finance qualifying housing projects. Should the mortgagor then default, HUD satisfies the debt to the mortgagee in exchange for title to the mortgaged property and all of the lending institution's outstanding claims against the mortgagor.

To be eligible for insurance under this section a mortgage may not exceed 90 percent of the amount which HUD estimates will be the replacement cost of the property or project when the proposed improvements are completed. 12 U.S.C. § 1715*l* (d)(4)(iii) (1982). However, if the principal amount of such mortgage exceeds the actual cost of construction plus the value of the land, the mortgage must be reduced by such excess prior to final endorsement for insurance. 24 C.F.R. § 221.555 (1984).

Plaintiff, Fairington Apartments of Lafayette (Fairington), is the owner of a multi-family housing project located in Lafayette, Indiana. Fairington and HUD executed two different documents which bound HUD to endorse the mortgage for the amount stated therein if plaintiff met the required conditions. *See Diamond v. United States,* 228 Ct.Cl. 493, 495, 657 F.2d 1194, 1195–96 (1981), *cert. denied sub nom., Keefe v. United States,* 459 U.S. 831, 103 S.Ct. 70, 74 L.Ed.2d 69 (1982). The first document, entitled "Commitment For Insurance Of Advances", was executed on November 14, 1977, and, insofar as is relevant, provides:

> The Federal Housing Commissioner, acting herein on behalf of the Secretary of Housing And Urban Development, will endorse for insurance under the provisions of Section 221(d)(4) of the National Housing Act, and the Regulations thereunder now in effect, a mortgage note in the amount of $3,085,500, to be secured by a mortgage, on the property located at * * * and consisting of approximately 544,500 square feet. The insurance endorsement will be subject to compliance with the requirements of the Regulations, and the terms and conditions set forth below. *The mortgage amount, however, is subject to reduction prior to final insurance endorsement of the mortgage note as provided in the Regulations.*
>
> \*   \*   \*   \*   \*   \*
>
> 5. (c) *Upon completion of the project* in accordance with the Drawings and Specifications *the mortgage now will be finally endorsed for insurance to the extent of the advances of mortgage proceeds approved by the Commissioner, subject to reduction as provided in the Regulations.* [Emphasis supplied.]

On December 13, 1977, the parties executed a document entitled "Agreement and Certification," which provides in part:

> Whereas, the Commissioner has issued his commitment to insure said mortgage loan in the amount of $3,085,500.00 *subject to reduction of said amount as provided in the National Housing Act and the Regulations promulgated thereto;*
>
> \*   \*   \*   \*   \*   \*
>
> (2) The Mortgagor and Mortgagee agree that the total advances of mortgage monies *shall not exceed the amount permitted by the National Housing Act and the Regulations promulgated pursuant thereto.* [Emphasis supplied.]

As noted, the commitment for insurance stipulated that the maximum insurable mortgage amount would not exceed $3,085,500. This amount represented 90 percent of a preconstruction estimate of the replacement cost of the project, including the land, i.e., $3,428,333. However, the actual approved cost of the land and improvements, turned out to be $3,565,387, 90 percent of which was $3,208,848, or $123,348 in excess of the maximum commitment. Accordingly, plaintiff claims that it is entitled to insurance for the full amount of the original commitment, $3,085,500.

However, HUD took the view that because certain of the items which entered into the actual cost were attributable to changes in the drawings and specifications, which decreased the actual cost of the project, they should also have changed the original estimate and hence the original commitment below the $3,085,500. Since the net effect of these change orders, if the drawings and specifications had originally so provided, would have been a reduction of $27,984 in estimated cost, HUD reduced plaintiff's $3,085,500 original mortgage insurance commitment and allowed plaintiff only $3,057,500 in insurance.[1]

Plaintiff claims that the $28,000 reduction is a breach of HUD's insurance commitment contract. Defendant does not dispute the existence of a contract but asserts that it did not breach it.

Both the Commitment for Insurance Advances and the Agreement and Certifica-

---

1. It is not explained why HUD subtracted $28,000 rather than 90 percent of that figure, i.e., $25,200, from the $3,085,500, which itself represented 90 percent of the estimated cost.

tion provide that any decrease in the loan insurance is limited to that which is provided for in the statute and regulations. The statute provides no assistance here. The regulations require the reduction of the maximum insurable mortgage amount if it exceeds 90 percent of the actual cost of construction plus the value of the land (24 C.F.R. § 221.555 (1984)), but they are silent regarding the reduction of the insurable amount where it is not in excess of 90 percent of actual cost. Plaintiff argues that, since the decrease of the loan insurance amount in the instant case is not authorized by 24 C.F.R. § 221.555, HUD did not have the authority under the contract to decrease the maximum insurable amount. Plaintiff contends further that since the maximum insurable mortgage provided for ($3,085,500) did not exceed 90 percent of the actual cost, as approved by HUD in its cost certification procedure (*see* 24 C.F.R. § 221.550 et seq.), the reduction in the insured amount breached the contract. Finally, plaintiff contends that the reduction of the insurable amount by HUD officials is contrary to the National Housing Act and therefore unauthorized.[2]

To justify the decrease in the insurable amount provided for in the contracts above, defendant relies first on the provisions of HUD Handbook 4470.1 REV., providing instructions for HUD personnel. This handbook states (at ¶ 2–25.c.) that "[w]here the net effect of the change results in a net decrease in cost, the maximum insurable mortgage is reduced by the amount of any net decreases in cost resulting from acceptable construction changes." Defendant argues that this handbook is a regulation and that, therefore, the amount of the loan guaranty may be reduced according to its provisions.

■ Whether the handbook may be considered a regulation depends upon whether or not HUD intended its provisions to be generally binding on it. *See Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1967).

Numerous courts have held that the provisions of administrative agencies' handbooks designed for internal use cannot be enforced against the government.[3] The issue of whether or not HUD handbooks are binding on the agency has also been litigated in many instances. In most cases, the handbooks have been held not to be binding on HUD.[4] The courts which have considered this issue have tended to view the question as a factual issue of the intent of HUD when promulgating the handbook. *See Thorpe v. Housing Authority*, 393 U.S. 268, 276, 89 S.Ct. 518, 523, 21 L.Ed.2d 474 (1969); *Feldman*, 430 F.Supp. at 1327. The factors which they have considered include: (1) HUD regulations providing that all HUD regulations will be published

**2.** Given the resolution of this case which follows, this contention need not be addressed.

**3.** *See Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (*per curiam*) (S.S.A. Claims Manual without legal effect); *Gatter v. Nimmo*, 672 F.2d 343, 347 (3d Cir.1982) (V.A. manual without force of law); *United States v. Harvey*, 659 F.2d 62 (5th Cir. 1981) (V.A. loan servicing manual created no rights which could be enforced against the government); *First State Bank of Hudson County v. United States*, 599 F.2d 558, 564 (3d Cir. 1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980) (F.D.I.C. manual setting up agency procedure was not a substantive rule); *Concerned Residents of Buck Hill Falls v. Grant*, 537 F.2d 29, 38 (3d Cir.1976) (Soil Conservation Service manual were merely internal agency operating procedures and not binding on the agency); *Brennan v. Ace Hardware Corp.*, 495 F.2d 368, 376 (8th Cir.1974) (Labor Depart-

ment field operations handbook without the force and effect of law); *Lumber, Prod. & Indus. Workers Log Scalers v. United States*, 580 F.Supp. 279, 283–84 (D.Or.1984) (Forest Service manual does not have force and effect of law); *Gatter v. Cleland*, 512 F.Supp. 207, 212 (E.D.Pa. 1981) (V.A. handbooks containing internal operating procedures are not binding on the agency because it was not promulgated with proper procedural requisites).

**4.** *See Fiorentino v. United States*, 221 Ct.Cl. 545, 552, 607 F.2d 963, 968 (1979), *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980); *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360–61 (5th Cir.1977); *Ranjel v. City of Lansing*, 417 F.2d 321, 323 (6th Cir.1969), *cert. denied*, 397 U.S. 980, 90 S.Ct. 1105, 25 L.Ed.2d 390 (1970); *Feldman v. U.S. Dep. of H and U Development*, 430 F.Supp. 1324, (E.D.Pa.1977); *Brown v. Lynn*, 392 F.Supp. 559 (N.D.Ill.1975).

in the Federal Register (*Ranjel,* 417 F.2d at 323; *Feldman,* 430 F.Supp. at 1327; *Brown,* 392 F.Supp. at 561–62); (2) Whether the handbook was intended for internal agency use only (*Roberts,* 556 F.2d at 360; *Feldman,* 430 F.Supp. at 1327); and (3) Whether the handbook was meant as an independent source of authority for formal HUD actions. (*Feldman,* 430 F.Supp. at 1327).

There have also been cases where HUD manuals have been held to be binding on the agency.[5] In the case at bar, none of the factors relied upon by these courts to hold that the handbooks were binding on HUD is present.

HUD regulations require that any regulation promulgated by the agency be published in the Federal Register. 24 C.F.R. § 10.1 (1984) (The same provision was in force at the time the contracts were signed, *see* 24 C.F.R. § 10.1 (1977)[6].) Since HUD is bound by its own regulations, and the handbook at issue in this case was not published in the Federal Register, the handbook may not be considered as a regulation as a matter of law. Also, the fact that the agency did not publish the handbook in the Federal Register is an indication that HUD did not intend to be bound by its terms. *See Roberts,* 556 F.2d at 362; *Brown,* 392 F.Supp. at 562; *Mandina v. Lynn,* 357 F.Supp. 269, 279 (W.D.Mo.1973).

Further, the intent of HUD not to be bound is shown in the forward of the handbook. The forward states:

This handbook is designed to provide basic mortgage credit instructions for HUD personnel in analyzing proposals for mortgage insurance. The primary objectives of this handbook are to standardize mortgage credit procedures throughout the Regional and Field Offices; to provide a basis for sound mortgage credit conclusions; to aid in determining acceptability and financial capacity of sponsors; and to clarify and re-emphasize previously issued instructions.

There is nothing in this forward which would indicate that the handbook was intended to be anything more than an internal procedure manual, which is not binding on federal agencies. *See* note 3, *infra.*

■ Finally, defendant makes no contention that plaintiff was aware of the existence of the handbook or understood that the term "regulation" as used in this contract also referred to this handbook at the time the contract was signed. For the above reasons, the HUD handbook cannot be considered a regulation, and, therefore, defendant cannot rely on its provisions as support for its unilateral reduction in the amount of the insurable mortgage.

As an independent ground for sustaining HUD's reduction in the amount of the insurable mortgage even when plaintiff's approved costs were higher, defendant contends that HUD's approval of plaintiff's requests for allowance of changes in the construction drawings and specifications were made conditional upon plaintiff's acceptance of the corresponding reduction in the mortgage amount. This is based, upon paragraph 6 of HUD's Commitment for Insurance of Advances, in conjunction with

---

5. *Thorpe,* 393 U.S. at 276, 89 S.Ct. at 523 (Letters written by HUD Assistant Secretary and Legal Counsel· show the intent of the agency to make the handbook binding on HUD.); *Ferrell v. Pierce,* 743 F.2d 454, 462 (7th Cir. (1984) (HUD handbook which was incorporated into lawsuit settlement held to be binding on the agency); *Burroughs v. Hills,* 741 F.2d 1525, 1529 (7th Cir.1984) (Contents of HUD handbook used solely to glean evidence of legislative intent to benefit a particular class of potential litigants); *Beverly v. Macy,* 702 F.2d 931 (11th Cir.1983) (Contract expressly incorporated by reference the HUD handbook.); *Paige v. Harris,* 584 F.2d 178 (7th Cir.1978) (HUD personnel manual held to give an employee a property interest protected by the Due Process Clause because it gave a presumption of tenure.); *Save The Courthouse Committee v. Lynn,* 408 F.Supp. 1323, 1337–38 (S.D.N.Y.1975) (HUD handbook published in the Federal Register is binding on the agency).

6. HUD is not required by the Administrative Procedure Act to promulgate its rules pursuant to the requirements of that Act. *See Housing Auth. of the City of Omaha, Neb. v. United States,* 468 F.2d 1, 9 (8th Cir.1972), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1360, 35 L.Ed.2d 588 (1973). *See also* 24 C.F.R. § 10.1 (1984).

the Request for Construction Changes—Project Mortgages (FHA Form No. 2437).

But it is not at all clear that under the Commitment HUD reserved the right to condition approval of plaintiff's construction changes herein upon plaintiff's willingness to accept a reduction in the maximum insurable amount.

Insofar as pertinent paragraph 6 of the Commitment provides:

6. * * * Changes in the Drawings and Specifications which result in any net construction cost increase, or will change the design concept, or will result in a net cumulative construction cost decrease of more then [sic] 2% of the contract amount may be effected only with the prior written approval of the Lender and the Commissioner. The Commissioner's approval of any change described above may be subject to such conditions and qualifications as the Commissioner in his discretion may prescribe.

The construction changes in question were:

| Date of Request | Date Approved | Amount of Cost Increase or Decrease | Cumulative Cost Decrease |
|---|---|---|---|
| 4/7/78 | 6/7/78 | − 51,900 | −51,900 |
| 2/20/78 | 11/14/78 | − 1,216 | −53,116 |
| 8/3/78 | 11/14/78 | + 750 | −52,366 |
| 8/4/78 | 11/14/78 | + 6,088 | −46,278 |
| 9/28/78 | 11/14/78 | + 225 | −46,053 |
| 11/7/78 | 12/4/78 | + 3,594 | −42,459 |
| 6/8/79 | 6/21/79 | + 14,475 | −27,984 |

■ Under paragraph 6 of the Commitment HUD's right to condition approval of the construction changes upon plaintiff's agreement to a reduction in the maximum insurable amount depended upon their resulting in "a net cumulative construction cost decrease of more then [sic] 2% of the contract amount." As the construction contract amount (apart from the land) was $2,556,326 and the net cumulative construction decrease was $27,984, or only slightly more than one percent, it may properly be inferred that under the Commitment HUD had no right to impose the condition at issue.

■ Nor may plaintiff's Request for Construction Changes and HUD's approval

thereof on Form 2437 be deemed to constitute a contract wherein plaintiff agreed to a decrease in the maximum insurable mortgage as a condition for acceptance of its request. Form 2437 is in two parts. The top half, filled out by the applicant, described the proposed change and the resulting increase or decrease in the cost of construction of the project. The bottom half contained the FHA findings on the proposed change, the effect on the original cost and on previously approved changes, and also the conditions which HUD might provide for its acceptance of the change, with each printed condition being preceded by a blank box so that FHA could place an "X" therein if it intended to make the condition applicable. Thus the pertinent portion of paragraph 3 of the second half of the form stated as follows:

3. [ ] Changes _____ are acceptable and the drawings and specifications are correspondingly amended, Provided:

\* \* \* \* \* \*

D. [ ] There is compliance with the conditions stated on the reverse side.

The reverse side contained the following paragraph:

Conditions of Acceptance and/or Reasons for Unacceptability:

1. When the FHA estimated cost of all accepted changes results in a net decrease in the total construction cost the insurable mortgage will be similarly decreased, but if the net effect is an increase the additional costs will be defrayed by the mortgagor. The acceptance of any change or changes involving a net increase does not increase the mortgage amount.

However, in the executed Form No. 2437 accepting plaintiff's request for construction which would result in the $51,900 cost reduction (a part of which is the $27,984 net decrease at issue) the word "Provided" was XXXed out, and there was no "X" in the box at line D which would have signified that FHA's approval was conditioned on compliance with the condition on the reverse side that "When the

FHA estimated cost of all accepted changes results in a net decrease in the total construction cost the insurable mortgage will be similarly decreased." Thus, it may fairly be inferred that the executed Form No. 2437 indicated that the proposed $51,900 change was acceptable to HUD without the requirement that the contractor meet any further conditions, even if HUD had the right to make those conditions applicable to this proposed change.

The government also contends that because the box making the reverse side of Form 2437 applicable was marked with an "X" on all of Fairington's other Forms 2437 approving changes, the $51,900 decrease is still includable in its calculations, because the clause on the reverse side refers to the "net decrease in the total construction cost." Were the defendant correct in its analysis, HUD would only have had to check the applicable box on one change form to make the reverse side applicable to all other changes. The fact that HUD checked the box on all of Fairington's other change forms is inconsistent with this analysis. Also, the contract only gives HUD discretion to impose conditions on the specific change requested by the contractor. It gives no authority to impose conditions retroactively or prospectively. The government has advanced no reason why the decision of HUD officials not to impose any conditions on the $51,900 negative change order should be reversed by subsequent events. Thus, the clause on the reverse side of Form 2437 can only be read to apply to those changes where the box making the reverse side of 2437 applicable has been marked by HUD.

■ Finally, it is contended that the plaintiff agreed to the decrease in the insurable amount, when it completed the change form, as a modification of the original agreement. Both parties to a contract may, of course, modify both the substantive and procedural provisions of a contract at any time. *Pinewood Realty Ltd. v. United States*, 223 Ct.Cl. 98, 105, 617 F.2d 211, 215 (1980); *General Dynamics Corp. v. United States*, 214 Ct.Cl. 607, 617, 558

F.2d 985, 990 (1977). Thus, if the government can show that Fairington agreed to the modification of the loan commitment amount this would be binding on plaintiff regardless of the provisions in the original contract.

■ The record, however, does not support this contention. First, as noted, HUD signified its intention that, with regard to the $51,900 change, the contractor not be bound by the condition it now seeks to impose, since the proviso was crossed out and the necessary box on the form was not checked. The crossing out of the proviso indicates an intent not to bind the plaintiff to these conditions and represents more than a mere omission to mark a box.

Second, even if the box were checked, the provision on the reverse side could not be made applicable to plaintiff as a contract modification. This is due to the facts that HUD officials completed the bottom of the form after Fairington had completed the top portion; that the conditions on the reverse side were only applicable if checked by HUD; and that at the time Fairington completed the top half of Form 2437 it could not have known whether or not HUD would check the box making the conditions on the reverse side of the form applicable. Thus, Fairington was never given the opportunity of deciding whether to forego the change or accept the conditions. Without such an opportunity, it cannot be said that Fairington ever agreed to modify the original contract, as the government contends.

For the reasons set forth herein, plaintiff is entitled to damages equal to the added cost of obtaining without mortgage insurance the $28,000 necessary to complete the project on the assumption that its lending institution only advanced $3,057,500 as the result of HUD's actions.

Accordingly, defendant's motion for summary judgment is denied, and plaintiff's motion for summary judgment is granted solely as to the liability of the government but not as to damages. Plaintiff's counsel will inform the court within 30 days of this order as to whether the parties will be able to stipulate the amount of the govern-

ment's liability or whether further proceedings will be necessary.