**Marjorie JACKSON**

v.

**The UNITED STATES.**

No. 577–86L.

United States Claims Court.

May 22, 1987.

John F. McHugh, New York City, for plaintiff.

Glen R. Goodsell, Washington, D.C., for defendant.

## OPINION

MARGOLIS, Judge.

Plaintiff seeks damages for breach of a contract for the sale of real property by the Department of Housing and Urban Development (HUD). Defendant has moved for dismissal of the complaint for failure of the plaintiff to state a claim upon which relief can be granted or, in the alternative, for summary judgment. Plaintiff has cross-moved for summary judgment on the issue of liability. For the reasons stated herein, the motion of the plaintiff is granted, and the defendant's motion is denied.

## FACTS

On April 26, 1985 HUD advertised, among others, the real property at 134–09 120th Avenue, South Ozone Park, New York for sale to the highest bidder. The sale was by sealed-bid auction. The bids were opened on May 7, 1985. The plaintiff's bid, $36,100, was the highest bid; the standard all cash retail sales contract was then signed by the plaintiff and submitted to HUD for acceptance. The contract was signed by HUD on May 24, 1985 and transmitted to the plaintiff by letter from Charles Pinero, Chief, Property Disposition Branch of HUD, dated May 29, 1985. The contract contained a provision stating that the sale "shall be closed at Dayton & D'Amato, P.C. . . . (within 45 days)." The name of the attorney and the time for closing were typed on a form contract; the form itself stated that closing shall be "as soon as possible and within a reasonable time after indication by the Seller of readiness to close." The May 29, 1985 letter transmitting the signed contract again notified plaintiff that the closing attorney would be Dayton & D'Amato and stated that the sale "*must* close prior to forty five (45) days from the date of this letter. . . . [o]therwise, your [c]ontract *will* be cancelled, and your deposit *will* be retained." (Emphasis added.)

Both parties agree that the date of the contract for purposes of this action is May 29, 1985 and that the closing should thus have occurred within 45 days after that date, approximately mid-July, 1985.

Plaintiff alleges, and which is undisputed by defendant, that she contacted Dayton & D'Amato on June 19, 1985 and again in early July, 1985 to set a closing date for the property and was told that the file had not been received from HUD and that she would be notified when Dayton & D'Amato was ready to close the sale.

On August 30, 1985, Dayton & D'Amato sent a letter to the plaintiff which notified her that it represented HUD in connection with the sale of the property and that closing was to take place within 45 days of the signing of the contract. The letter stated that she had not scheduled a closing date within that time period and that Dayton & D'Amato had set Wednesday, September 11, 1985, as the closing date. Plaintiff received this letter on September 4, 1985; this fact is not disputed by the defendant.

On September 4, 1985 plaintiff underwent oral surgery for the removal of eight teeth; her dentist expected her to have difficulty "for some time to come." On September 5, 1985 plaintiff contacted HUD to request an extension of time for the closing. Defendant's representative orally told her to request an extension in writing and to submit a fee of $10 per day for each day of the requested extension and a copy of a loan commitment for the property to "indicate a serious intention to go through with the closing." By letter dated September 8, 1985 to Dayton & D'Amato, plaintiff confirmed her request for a delay of the closing, requested that the defendant "[p]lease notify me of an adjourned date," and enclosed the explanation from her dentist; she did not submit the requested fee or loan commitment. Plaintiff did not receive a reply to this request prior to the

scheduled closing date of September 11. By letter from Mr. Pinero on September 12, 1985, HUD denied plaintiff's request for an extension because she was "required to close title within 45 days" and because she had "already had an additional 50 days" to close the sale; the letter also declared plaintiff's earnest money deposit of $2,000 forfeited. Plaintiff alleges, and which is undisputed by the defendant, that she received this letter on September 18, 1985. Defendant offered the property to the second-highest bidder on September 13, 1985; this bidder accepted the contract and the property was conveyed on January 30, 1986. This purchaser subsequently sold the property for substantially more money than plaintiff's contract price.

Plaintiff protested the cancellation of the contract and requested its reinstatement orally on September 20, 1985, and confirmed this request on September 24, 1985 by letter to Mr. Pinero of HUD. There is no record that defendant responded to this letter. On October 2, 1985 plaintiff again wrote to Mr. Pinero protesting the cancellation of the contract and requesting reinstatement of the contract, or at least refund of the earnest money deposit. Mr. Pinero responded to this letter on October 11, 1985. Plaintiff was informed that her request for reinstatement of the contract was denied because "[w]e feel we permitted you ample time in which to close title on above property." Because the HUD handbook apparently considers "extraction of teeth" to be a valid excuse for delay, however, Mr. Pinero determined that it was appropriate to refund plaintiff's earnest money deposit in this case. Plaintiff's $2,000 deposit was subsequently returned to her.

### DISCUSSION

Defendant claims that plaintiff has no enforceable rights in this action because HUD properly rescinded the contract due to plaintiff's failure to perform as required and, in any event, that plaintiff suffered no legal harm because her deposit was returned. Plaintiff claims that the defendant may not force her into breach by its own failure to close the sale, and that she was damaged to the extent of her lost profits on anticipated resale of the property, at least $50,000.

It is undisputed that the closing did not take place within 45 days after May 29, 1985. The rights of the defendant at that point were clearly stated in the HUD letter of May 29, 1985; the "[c]ontract *will* be cancelled, and [the] deposit *will* be retained." (Emphasis added.) Defendant, however, elected to continue rather than cancel the contract. By the letter of its attorney on August 30, 1985, which unilaterally set a closing date of September 11, 1985, the defendant elected to continue the contract. Any allegation that "time was of the essence" in the original 45–day closing deadline was clearly refuted by this action of the defendant's attorney. *See Pinewood Realty Ltd. v. United States*, 223 Ct.Cl. 98, 102–03, 617 F.2d 211, 214 (1980). Defendant's contention that *Pinewood* holds that any modification of "time of the essence" provisions must be agreed to in writing is incorrect; the contract itself in *Pinewood* required such writing. *Id.* There is no comparable provision in the contract at issue here, and in any event the government did agree to the extension in writing; it set the new date unilaterally and notified the plaintiff.

 That the government may elect to continue a contract rather than terminate it after the passage of a due date was established in *DeVito v. United States*, 188 Ct.Cl. 979, 990–91, 413 F.2d 1147, 1153–54 (1969). To find such an election, the court here must find government forbearance and reliance thereon by the plaintiff. *Id.* Defendant claims that the letter of August 30, 1985 did not constitute an election to continue the contract because it was sent due to plaintiff's failure to close within 45 days, and that the letter, in fact, highlighted the 45–day requirement. However, the letter was sent well after the expiration of the 45 days. The government's act of forbearance here was express; closing of the sale was scheduled by the government's attorney to occur almost two months after expiration of the original contractual dead-

line. The plaintiff's actions to close the sale after receipt of the defendant's letter and her continued efforts to obtain a loan commitment even though her contract clearly covered a "cash sale," indicate that she relied on the government's election to continue the contract. Defendant does not dispute that plaintiff was ready, willing, and able to go to closing with cash. Furthermore, where the government's forbearance is express and in writing, it is certainly reasonable for the other party to rely thereon. It is not fatal to plaintiff's claim that she did not submit to the defendant the $10–per-day fee as requested in order to obtain a new closing date. When the government elected to continue the contract, it had a preexisting duty to close the sale; it therefore could not validly demand additional consideration to carry out this duty. *See Restatement (Second) of Contracts* § 73 comment c (1981).

▮ The government may reestablish that "time is of the essence" after election to continue rather than terminate a contract. *DeVito*, 188 Ct.Cl. at 991–92, 413 F.2d at 1154. This may be done either by setting a new, reasonable date for performance, *see National Bag Corp.*, GSBCA No. 4331, 77–2 BCA (CCH) ¶ 12,664 at p. 61,- 393–94 (1977), or through a bilateral agreement, *see Bailey Specialized Buildings, Inc. v. United States*, 186 Ct.Cl. 71, 79, 404 F.2d 355, 359 (1968). *See also DeVito*, 188 Ct.Cl. at 992, 413 F.2d at 1154 (the new date must be both reasonable and specific from the standpoint of the capabilities of the other party).

The setting of the closing for September 11, 1985 did not set a reasonable new due date for this contract; plaintiff was not consulted in the setting of this date and her dental surgery prevented her from attending. This fact also precludes finding that this new date was the product of a bilateral agreement. That the defendant should have considered "extraction of teeth" to be a valid reason for postponement of closing is indicated by its reliance on this very reason to return plaintiff's earnest money deposit. At a minimum, the defendant could have informed the plaintiff prior to the scheduled closing date that it would not grant her request for extension; plaintiff could then have taken action to be represented at the closing. When the defendant cancelled plaintiff's contract on September 12, 1985 because she failed to close the sale on the defendant's unilaterally scheduled date, the defendant breached the contract.

Defendant also alleges that it is entitled to judgment because plaintiff, as a willing buyer who was refunded her deposit, did not sustain damages. Defendant alleges that plaintiff's bid consisted of the "fair market value" of the property and that plaintiff is not entitled to compensation for any "lost profits" she may have sustained. The government cites for this proposition cases involving compensation for takings under the Fifth Amendment, *see, e.g., Branning v. United States*, 6 Cl.Ct. 618, 626 (1984), *aff'd*, 784 F.2d 361 (Fed.Cir. 1986) ("in a case where the Government has taken a property interest, compensation for the interest taken does not include future loss of profits"), and cases holding that recovery for consequential damages is not possible in the Claims Court, *see, e.g., DeBarros v. United States*, 5 Cl.Ct. 391, 395 (1984) ("well settled that consequential damages are not recoverable against the United States for breach of contract").

▮ In awarding damages for breach of contract, the goal is to put the non-breaching party in as good a position as she would have been had the contract been performed. *Miller v. Robertson*, 266 U.S. 243, 247, 45 S.Ct. 73, 74, 69 L.Ed. 265 (1924); *James S. Lee & Co. v. United States*, 9 Cl.Ct. 322, 323 (1986). This court is skeptical about claims for lost profits. *See Neely v. United States*, 152 Ct.Cl. 137, 146, 285 F.2d 438, 443 (1961); *Navajo Tribe of Indians v. United States*, 9 Cl.Ct. 336, 417 (1986). However, where definite proof is available that profits would have been realized and a basis is available for their reasonable estimation, damages for lost profits are recoverable in this court. *Neely*, 152 Ct.Cl. at 146, 285 F.2d at 443; *Navajo Tribe*, 9 Cl.Ct. at 417. Where the fact of damages has been clearly established, the lack of certainty and preciseness as to the amount of damages is not fatal to

recovery, providing there is a reasonable basis for computation of damages. *G.M. Shupe, Inc. v. United States*, 5 Cl.Ct. 662, 719 (1984).

Defendant does not dispute the fact that the party who purchased the property at issue here resold it thereafter for a substantial profit. Defendant contends, however, that this fact does not indicate that plaintiff would have made a profit from resale if she had purchased the property. The court agrees that the mere fact of resale for a sum higher than the plaintiff's contract price does not prove that she is entitled to lost profits. It does appear, however, that plaintiff has shown that she has been damaged; what is left is for plaintiff to prove the amount of that damage.

## CONCLUSION

Defendant's actions in setting a date for closing the sale of the real property, that was after the contractually-required 45 day period for closing, was an election to continue the contract. Any newly established closing date after that time must have been reasonable or the product of an agreement between the parties. Cancellation of the contract after failure to properly set a new time for closing the sale of the real property resulted in a breach of the contract by the government. Plaintiff's summary judgment motion on the issue of liability is granted and that of the defendant is denied. The issue of damages will be determined in further proceedings.