NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**COASTAL PARK LLC, MEYER LANDAU,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2020-1687

_____

Appeal from the United States Court of Federal Claims in No. 1:17-cv-00422-DAT, Judge David A. Tapp.

_____

Decided:  August 18, 2021

_____

G. ALEXANDER NOVAK, Novak, Juhase & Stern, LLP, Cedarhurst, NY, for plaintiffs-appellants.

STEPHEN CARL TOSINI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by DEBORAH ANN BYNUM, JENNIFER B. DICKEY, ROBERT EDWARD KIRSCHMAN, JR.

_____

Before PROST*, BRYSON, and REYNA, *Circuit Judges.*

PROST, *Circuit Judge.*

Appellants Coastal Park LLC and Meyer Landau (collectively, "Coastal Park") filed this suit in the Court of Federal Claims seeking return of a $310,000 deposit paid under Coastal Park's agreement to purchase a former U.S. Coast Guard housing complex in Elizabeth City, North Carolina.  The complex included various housing units as well as "several basketball goals, a tennis court, a children's playground, [and] a large gazebo." J.A. 30.  The government kept Coastal Park's deposit upon concluding that Coastal Park had defaulted on the transaction.  The Court of Federal Claims ruled that Coastal Park was not entitled to return of the deposit. *Coastal Park LLC v. United States*, 147 Fed. Cl. 179, 185 (2020).  We affirm.

## BACKGROUND

The U.S. General Services Administration ("GSA") accepted Mr. Landau's $3.1 million bid in an auction of the subject property on September 8, 2016.  J.A. 58.  The resulting contract[1] required Coastal Park to deposit $100,000 with its opening bid, as well as a further deposit that would bring the deposited funds to 10% of the purchase price.  J.A. 41, 45.  Coastal Park made both deposits, together $310,000.  The remaining balance would come due on the

---

\*    Circuit Judge Sharon Prost vacated the position of Chief Judge on May 21, 2021.

[1]    The invitation for bids ("IFB") to which Coastal Park responded provides that "[t]he IFB and the bid, when accepted by the Government shall constitute an agreement for sale . . . between the high bidder . . . and the Government." J.A. 36.  This agreement "shall constitute the whole contract to be succeeded only by the formal instrument(s) of transfer, unless modified in writing and signed by both parties." J.A. 36.

"closing date," October 23, 2016. J.A. 39. The contract specified an "[a]ll cash, as is" transaction. J.A. 28. It also stated that "[t]he failure of any bidder to inspect, or to be fully informed as to the condition of all or any portion of the Property, will not constitute grounds for any claim or demand for adjustment or withdrawal of a bid after the auction." J.A. 36.

On October 8, 2016, Hurricane Matthew made landfall in South Carolina and then traveled north along the coast. *Coastal Park*, 147 Fed. Cl. at 182; JA 696–97, 703. On October 14, Coastal Park sought an extension of the closing date, citing hurricane-related delays in surveying, appraisal, and inspection work. J.A. 674. And on October 21, GSA granted an extension to October 30 based on Coastal Park's extension request regarding "the delays of business activities in the eastern North Carolina area caused by Hurricane Matthew," and also offered a further extension to November 14 that was conditioned on an additional 10% deposit. J.A. 69; *see Coastal Park*, 147 Fed. Cl. at 182. Although Coastal Park didn't make the extra deposit, GSA nonetheless on October 28 granted an additional extension to October 31 at Coastal Park's request. *Coastal Park*, 147 Fed. Cl. at 182. And on October 31, GSA granted a further extension to November 7, again due to "delay of business activities caused by Hurricane Matthew" and without requiring a further deposit. J.A. 71; *see Coastal Park*, 147 Fed. Cl. at 182.

Additionally, GSA noted that this extension would "also afford [Coastal Park] the opportunity to view and inspect the property." J.A. 71. Coastal Park subsequently hired two inspections firms to assess any damage caused by the hurricane and forwarded the resulting reports to GSA on November 6. *Coastal Park*, 147 Fed. Cl. at 182. The reports declined to attribute any damage to the hurricane or quantify any damage occurring after the acceptance of the bid. *Id.*; *see* J.A. 88 ("Condition prior to this date is unknown."); J.A. 91 ("[D]etermining when the

damage occurred or the extent of damage is beyond the scope of the inspection.").

On November 7, GSA contacted Coastal Park, noting that GSA had received neither the final balance nor the 10% deposit required for the previously discussed extension to November 14. J.A. 111–12; *Coastal Park*, 147 Fed. Cl. at 182. GSA noted further that, although it had received the two inspection reports, neither one included a "monetary assessment" of the damage as requested. J.A. 111. GSA therefore explained that, because it "ha[d] not yet received the requested information and balance due," it was putting Coastal Park "on notice to cure" and that "otherwise a finding of default of the contract will be determined." J.A. 111; *see Coastal Park*, 147 Fed. Cl. at 182. GSA gave Coastal Park until 11:00 a.m. on November 9 to forward the outstanding balance and indicated that failure to do so would "result in the forfeiture of the $310,000.00 bid deposit per the [contract]." J.A. 111; *see Coastal Park*, 147 Fed. Cl. at 182.

Coastal Park responded through counsel on November 8 that it "rejected" the notice to cure and demanded that GSA "tell[] us what it wants 'monetized.'" J.A. 129; *see Coastal Park*, 147 Fed. Cl. at 182. When Coastal Park did not forward the funds due on November 9, GSA declared Coastal Park in default the next day. J.A. 109–10. GSA sold the property to another bidder on December 15. *Coastal Park*, 147 Fed. Cl. at 182.

Coastal Park sued in the Court of Federal Claims. The court dismissed some of Coastal Park's claims—none of which are raised on appeal—leaving only Coastal Park's claim for the deposited $310,000. The parties cross-moved for summary judgment. The court denied Coastal Park's motion and granted the government's. *Id.* at 185. This appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

## I

We review the Court of Federal Claims' grant of summary judgment and its contract interpretation de novo. *Shaw v. United States*, 900 F.3d 1379, 1381 (Fed. Cir. 2018). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 1382 (quoting *Nw. Title Agency v. United States*, 855 F.3d 1344, 1347 (Fed. Cir. 2017)). "Contract interpretation begins with the language of the written agreement." *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc). "When the contractual language is unambiguous on its face, our inquiry ends and the plain language of the [a]greement controls." *Id.* at 1040–41. That is precisely the situation here.

First, the balance was due on the "closing date," as noted above. J.A. 39; *see Coastal Park*, 147 Fed. Cl. at 181, 184. Second, the government was entitled to retain the deposit as a remedy for default:

> In the event of . . . any default by the Purchaser in the performance of the contract . . . or . . . failure by the Purchaser to consummate the transaction, the Purchaser agrees that any Earnest Money and all deposits paid to the Government in any acceptable form . . . are subject to forfeit by the Purchaser to the Government at the option of the Government as damages for breach of contract.

J.A. 37–38.[2]

---

[2]    "Earnest Money" was defined as "the Bidder's deposit of money demonstrating the Purchaser's good faith offer to the Government to fully execute and comply with all terms, conditions, covenants and agreements contained

Third, the contract states that "[t]he Government reserves the right to extend the closing date for a reasonable amount of time." J.A. 39. And, in a section titled "Delayed Closing," the contract provides:

> Except for delayed closing caused solely by the Government or force[] majeure events, any change to the closing date established in Section 15 [i.e., October 23, 2016] is subject to written approval by the Government. The Government reserves the right to refuse a Purchaser's request for extension of closing. . . . The Government may impose additional terms and conditions to grant an extension.

J.A. 39–40.

Coastal Park did not "consummate the transaction," J.A. 37, by the October 23 closing date. Nor did it do so by November 7, the last extension granted by GSA. Accordingly, GSA declared Coastal Park in default and Coastal Park "forfeit[ed]" its earnest-money deposits, J.A. 37. As the Court of Federal Claims explained, "[p]ayment was due on the Closing Date, and although this date was modified several times, failure to tender payment in full amounted to a default." *Coastal Park*, 147 Fed. Cl. at 184 (internal quotation marks omitted).

## II

Coastal Park's arguments to the contrary are unpersuasive. First, Coastal Park takes issue with the

---

in any contract resulting from the Government's acceptance of the Bidder's offered bid price." J.A. 35. "Once a bid is accepted by the Government for contract," the definition continues, "all prior deposits made by the Purchaser to register for the sale . . . become Earnest Money to the benefit, custody, accountability and control of the Government." J.A. 35.

conclusion that time was of the essence. Appellant's Br. 10–16. "When a contract contains fixed dates for performance," the Court of Federal Claims explained, "failure to perform within those deadlines is a condition of default." *Coastal Park*, 147 Fed. Cl. at 183 (citing *DeVito v. United States*, 413 F.2d 1147, 1154 (Ct. Cl. 1969); *Pinewood Realty Ltd. P'ship v. United States*, 617 F.2d 211 (Ct. Cl. 1980)). As Coastal Park admits, this proposition is grounded in the holding of *DeVito* that "[t]ime is of the essence in any contract containing fixed dates for performance," 413 F.2d 1147; *see also Pinewood*, 617 F.2d at 103 (reiterating same in real-estate context), and this case is binding precedent. Appellant's Br. 10–11 n.3 (citing *S. Corp. v. United States*, 690 F.2d 1368, 1369 (Fed. Cir. 1982) (en banc). Nonetheless, Coastal Park suggests that general principles of real-estate contract law, and especially those of North Carolina, suggest revisiting this federal rule. Appellant's Br. 10–16. But in our view, *DeVito* and *Pinewood* control in the context of this case, and as a panel we are not at liberty to overturn or ignore them.

Coastal Park also argues that, rather than declaring it in default, GSA should have instead assessed $1,000 per day in liquidated damages. Those liquidated damages, however, are only contemplated if the government grants an extension. J.A. 39. And the contract leaves the granting of any extension, as well as whether to pursue that remedy if so, to the government's discretion. J.A. 39 ("The Government reserves the right to refuse a Purchaser's request for extension of closing. However, if the Government grants an extension, the Purchaser may be required to pay . . . a liquidated damages assessment of $1,000.00 per day . . . ."). Moreover, as already noted, the contract provides also that "any Earnest Money and all deposits . . . are subject to forfeit . . . at the option of the Government as damages for breach of contract." J.A. 37–38. Here, the Court of Federal Claims found that "GSA had no confidence in Coastal's ability to consummate the transaction should

another extension be granted," and that "the permissive language in [the contract] provisions provides . . . GSA with a choice of remedies if Coastal failed to consummate the sale by November 9, 2016, the final closing date." *Coastal Park*, 147 Fed. Cl. at 185.

Last, Coastal Park makes several arguments premised on an alleged oral agreement to a 90-day extension, purportedly entered on September 23, 2016. *E.g.*, Appellant's Br. 8. First, the government notes that this allegation was raised for the first time on appeal, Appellee's Br. 18–21, and Coastal Park has not disputed that. Coastal Park's arguments based on this purported oral agreement are therefore forfeited. Coastal Park ought to have raised this allegation below; it is not for us to evaluate in the first instance. At any rate, the contract expressly states that "any change to the closing date . . . is subject to *written* approval by the Government," J.A. 39 (emphasis added), and it expressly disclaims oral representations being part of the contract, J.A. 36, so a merely oral agreement could not have sufficed.

## CONCLUSION

We have considered Coastal Park's remaining arguments but find them unpersuasive. We therefore affirm the judgment in the government's favor.

## AFFIRMED