**Donnie E. PRICE, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 98–336C.

United States Court of Federal Claims.

April 21, 2000.

Armand L. Andry, Oak Park, Illinois, attorney of record for the plaintiff.

Russell A. Shultis, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, and Robert E. Kirschman, Assistant Director, Commercial Litigation Branch, attorneys of record for the defendant.

## OPINION

HORN, Judge.

The above captioned case is presently before this court on cross motions for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). The plaintiff, Donnie E. Price, through counsel, alleges that the defendant, the United States government, acting through the United States Department of Veterans Affairs (VA), committed a breach of contract by failing to be able to deliver certain property in the condition it was in at the time the parties entered into the Installment Contract to purchase the property. Plaintiff further alleges that the VA committed a breach of the duty of good faith and fair dealing by failing to disclose the ongoing demolition proceedings filed against the property and for failing to give notice of building code violations prior to consummation of the contract. Plaintiff also alleges that the defendant violated the Illinois Dwelling Unit Installment Contract Act by failing to notify him of the code violations prior to execution of the contract. In this complaint, the plaintiff states that he "has suffered damage including the loss of the building, the loss of monies, time and effort expended rehabilitating the building, lost profits to be realized

on the rehabilitation of the building and other compensatory damages to be shown at trial in the amount of $75,000.00."

Defendant rejects plaintiff's claims and has moved for summary judgment. Defendant asserts that summary judgment is appropriate because there are no material issues of genuine fact in dispute, and that contract interpretation is a question of law. Defendant argues that the government sale of 3252 West Carroll Street is governed by Federal law, not Illinois law. Defendant further contends that plaintiffs have failed to come forward with sufficient evidence to prevail on the plaintiff's breach of contract and breach of duty of good faith and fair dealing. Defendant suggests that the conditions of the contract do not provide any basis for the relief the plaintiff seeks, and, in fact, expressly precludes the plaintiff from prevailing in this action because the contract contains explicit conditions to the contrary.

## FINDINGS OF FACT

The material facts before the court are undisputed by the parties. The parties have submitted joint stipulations of fact and both parties agree that this case is ripe for summary judgment. On or about April 17, 1995, the VA accepted title to the property located at 3252 West Carroll Street, Chicago, Illinois. On or about June 13, 1995, the City of Chicago filed a complaint in *City of Chicago v. Secretary of Veterans Affairs*, No. 95M1–404036 (Cir. Ct., Cook County), alleging that the building at 3252 West Carroll Street did not comply with building codes and that it was in a dangerous and unsafe condition. Among other requests, the City asked the court to issue an order authorizing the City to demolish the premises. On or about June 13, 1995, the City recorded a notice of *lis pendens* in the Circuit Court of Cook County.[1]

On or about June 27, 1995, the VA sent a property management broker to inspect the property. The property management broker reported that the property had been severely vandalized, that it had major plumbing lines in need of repair, and that the property needed a new roof because there was severe water damage on the second floor of the building. After receiving the report, on or about July 12, 1995, the VA filed a special and limited appearance in response to the City's complaint. On or about July 15, 1995, the VA informed counsel for the City that the VA had recently acquired 3252 West Carroll Street through foreclosure and that the VA had filed a special and limited appearance contesting the jurisdiction of the court in response to the City's complaint.

On or about August 25, 1995, the VA advertised 3252 West Carroll Street for sale in the Chicago Tribune at the price of $14,000.00. The notations next to the listing for the property indicated that the property was being offered "AS IS—NO FURTHER REPAIRS ARE TO BE DONE BY VA" and that the property had "Severe or structural damage." The listing for the property, however, did not include the notation "CV," which would have indicated that the property had "Code violations or condemnation acknowledgment," or the notation "DP," which would have indicated that there were "Demolition proceedings in progress." The listing also stated that:

> VA makes no warranty regarding property condition including mechanical system, well or septic capacity, foundations, air conditioners or any other appliances. Basements or crawlspaces may not be waterproof. Buyers are responsible for obtaining occupancy including satisfaction of code violations and communication with gas, electric, water, and sewer utilities for account transfer. All information herein is believed to be correct; however, it is subject to variations. VA assumes no liability for errors or omissions.... This listing is subject to confirmation, withdrawal, change in price and prior sale by VA—all any time without notice. Issuance of a revised listing automatically cancels any previous listing....

and that any interests acquired during the pendency of the suit are subject to its outcome." Black's Law Dictionary 942–43 (7th ed.1999).

---

1. *Lis pendens* is "[a] notice, recorded in the chain of title to real property, required or permitted in some jurisdictions to warn all persons that certain property is the subject matter of litigation,

Plaintiff, Donnie E. Price[2], first became aware of 3252 West Carroll Street in September 1995 when he saw the listing referred to in a newspaper article. Soon after seeing the listing, Mr. Price inspected the property, and admits that he was aware that the property suffered from structural defects, that the property was being offered for sale "as is," and that the building was not in compliance with building codes. Mr. Price has had prior experience with government real estate sales. Mr. Price's current residence, where he is both the property owner and landlord, was purchased from the Department of Housing and Urban Development (HUD). He executed the purchase of his current residence with the assistance of an attorney. With regard to 3252 West Carroll Street, however, Mr. Price did not search any public record regarding 3252 West Carroll Street or request any information regarding the property from the VA. Mr. Price also did not seek any professional advice regarding his possible purchase of the property other than from his real estate broker.

On or about September 12, 1995, Mr. Price offered to purchase 3252 West Carroll Street from the VA for $12,000.00 by submitting and signing an "Offer to Purchase and Contract of Sale." The "Offer to Purchase and Contract of Sale" stated that Mr. Price "examined [the] property and agree[s] to accept same in its present 'as is' condition, and further agree[s] that VA makes no warranties, expressed or implied, with respect thereto." On September 29, 1995, the City of Chicago served the Secretary of the Department of Veterans Affairs in Washington, DC, with a copy of the summons and complaint in *City of Chicago v. Secretary of Veterans Affairs*, No. 95M1–404036 (Cir. Ct., Cook County). On or about October 11, 1995, the VA accepted Mr. Price's offer to purchase the property. On or about October 19, 1995, the VA sent a letter to Mr. Price informing him that his offer to purchase 3252 West Carroll Street had been accepted, apparently on October 11, 1995, but did not inform Mr. Price of the summons and com-

plaint filed by the City of Chicago. On or about November 2, 1995, the VA advised the City of Chicago, by letter, that it had sold the property to Mr. Price. On November 6, 1995, Mr. Price signed an Installment Contract and made a down payment in the amount of $2,120.74. Mr. Price has since made monthly payments, that include an amount reserved for property taxes and insurance, pursuant to the Installment Contract. The Installment Contract provided that:

3. This Agreement is made subject to:

. . . .

 (4) Zoning and building laws or ordinances.

. . . .

The Buyer shall indemnify and save harmless the Seller from all loss and liability that arise by reason of any and all obligations and liabilities existing or arising out of any of the foregoing matters.

. . . .

14. Delivery to and acceptance of this Agreement by Buyer shall constitute delivery to and acceptance by Buyer of possession of the property described herein and shall constitute an acknowledgment by the Buyer that Buyer has inspected and examined the property, is satisfied with its condition and Buyer acknowledges that he/she is buying the property "as is." The Buyer ... assumes the risk of loss or damage to the buildings now situate, or hereafter constructed, in or upon said property by fire, casualty, or other happening.

Mr. Price, after signing the contract, did not record his interest in 3252 West Carroll Street. Mr. Price also did not apply for any permits to do repairs at 3252 West Carroll Street. He did not believe that he needed any permits.

---

**2.** According to the joint stipulations, Mr. Price is a 36 year old pharmacy technician, who has worked for the VA at the Westside Veterans Hospital since 1987. Mr. Price has a high school education, which he has supplemented with over 90 semester hours toward a degree in accounting.

On or about November 28, 1995, the Circuit Court of Cook County issued an order of default against the VA in *City of Chicago v. Secretary of Veterans Affairs*, No. 95M1–404036 (Cir. Ct., Cook County), for having failed to appear or otherwise plead in the matter before the court. Subsequently, on March 14, 1996, the Circuit Court of Cook County issued an order authorizing the City of Chicago to demolish the building at 3252 West Carroll Street. Notice of the demolition order was mailed to the VA on or about June 17, 1996 and was received by the VA on or about June 20, 1996. On or about June 27, 1996, the VA again notified the City of Chicago, by letter, that Mr. Price had purchased 3252 West Carroll Street. On or about July 1, 1996, the VA filed another special and limited appearance in *City of Chicago v. Secretary of Veterans Affairs*, No. 95M1–404036 (Cir. Ct., Cook County).

On or about September 9, 1996, the City of Chicago demolished the building at 3252 West Carroll Street. On or about December 9, 1996, Mr. Price sued the City of Chicago and the Federal government in the Circuit Court of Cook County for wrongful demolition and failure of a duty to disclose pending demolition proceedings and building code violations. The suit was subsequently removed to the United States District Court for the District of Illinois (Case No. 97 C 137). On May 30, 1997, the Federal District Court dismissed the action and remanded the case against the City of Chicago to the Circuit Court of Cook County. On December 2, 1997, Mr. Price moved to voluntarily dismiss his case against the City of Chicago.

On April 14, 1998, Mr. Price filed suit in this court for breach of contract, violation of the Illinois Dwelling Unit Installment Contract Act, and breach of duty of good faith and fair dealing. Mr. Price alleges that the VA had a duty to advise him of code violations and any ongoing demolition proceedings, before and after signing the Installment Contract. Mr. Price seeks damages and to recover the amounts he has expended, plus other damages he incurred. Mr. Price claims to have paid approximately $140 per month since December 1995 in interest, principal, and escrows on the Installment Contract, $32,926.07 to rehabilitate the property, $9,000 for attorney's fees, and $6,812 for his own time. In his complaint, he asserts a claim for $75,000.00.

The government filed a motion to dismiss the complaint for lack of jurisdiction or failure to state a claim for which relief can be granted. The government asserted that this court lacked jurisdiction because the complaint sounded in tort. Shortly after the oral argument to address the defendant's motion to dismiss took place, the parties entered into settlement negotiations, but ultimately reached an impasse in their settlement efforts. After consultation with the parties, this court ordered the pending motion to dismiss stayed, concluding that the case is more appropriately addressed in a motion for summary judgment. Subsequently, the parties have filed cross motions for summary judgment.

## DISCUSSION

Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ. P.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

RCFC 56(c) provides that in order for a motion for summary judgment to be granted, the moving party must demonstrate that the moving party is entitled to judgment as a matter of law and that there are no genuine issues of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Avenal v. United States*, 100 F.3d 933, 936 (Fed.Cir.1996) *(reh'g denied)*; *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306 (Fed.Cir. 1992); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan*

*Trust v. United States,* 20 Cl.Ct. 674, 679 (1990), *aff'd,* 944 F.2d 885 (Fed.Cir.1991). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lane Bryant, Inc. v. United States,* 35 F.3d 1570 (Fed.Cir.1994). Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment is appropriate when the sole dispute concerns the interpretation of a government contract, a question of law. *See Olympus Corp. v. United States,* 98 F.3d 1314, 1316 (Fed.Cir.1996).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Ford Motor Company v. United States,* 157 F.3d 849, 854 (Fed.Cir.1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. 2505. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. at 587–88, 106 S.Ct. 1348; *Wanlass v. Fedders Corp.,* 145 F.3d 1461, 1463 (Fed. Cir.1998) (*reh'g denied*); *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985). In the case of parties making cross-motions for summary judgment, each motion must be judged independently and the court must view the evidence in the light most favorable to the other party. *See Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir. 1987).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994) (*reh'g denied); Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679.

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party will need to go beyond the pleadings by use of evidence such as affida-

vits, depositions, answers to interrogatories and admissions. *Id.*

The above captioned case is ripe for summary judgment. The parties agree that summary judgment is appropriate and have filed affidavits, documents and joint stipulations of fact. Moreover, no material issues of disputed fact have been identified by the parties or by the court.

■ Initially, the plaintiff argues that the government violated the Illinois Dwelling Unit Installment Contract Act by failing to notify him of the code violations prior to execution of the Installment Contract.[3] To succeed on this argument, the plaintiff must be asserting that the Installment Contract plaintiff entered into with the federal government is subject to Illinois law. The court does not agree. Neither the Tucker Act, 28 U.S.C. § 1491(a)(1) (1994), nor the Contract Disputes Act prescribes the law to be applied in suits brought pursuant to these statutes. In *United States v. Kimbell Foods*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), however, the United States Supreme Court stated:

> Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy "dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law."

*Id.* at 728, 99 S.Ct. 1448 (quoting *United States v. Standard Oil Co.*, 332 U.S. 301, 310, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947)). In the context of contracts between the federal government and its citizens, the courts have opted for a uniform federal common law of contracts as the federal rule of decision, to avoid the uncertainty of conflicting state laws. *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 366–67, 744, 63 S.Ct. 573, 87 L.Ed. 838 (1943) (stating that when the government acts out of authority founded in the United States Constitution and federal statutes, state law is inapplicable and discussing the desirability of a uniform rule); *Montana v. United States*, 124 F.3d 1269, 1274 (Fed.Cir.1997); *Al–Kurdi v. United States*, 25 Cl.Ct. 599, 601 (1992) (also citing *Clearfield* and stating, "In the context of contracts between the federal government and its citizens, the courts have opted for a uniform federal common law of contracts as the federal rule of decision, to avoid the uncertainty of conflicting state laws."). Because the government's authority to enter into contracts is grounded in federal statutes and regulations, federal law, not Illinois law, applies to the instant breach of contract case. Thus, plaintiff's claim under Illinois law must be rejected. In *Nematollahi v. United States*, 38 Fed.Cl. 224 n. 4 (1997), the court advised that it would:

> [R]ely on federal common law to resolve the issues before this Court. The crux of the plaintiffs' argument is that this case involves a dispute as to the nature and extent of the real estate conveyed by the defendant, and, thus, the State of Colorado has a significant interest in applying its own law to the issues. However, as this Court stated previously in *Pinewood Realty Ltd. Partnership v. United States*, 223 Ct.Cl. 98, 102 617 F.2d 211, 213–14 (1980):
>
> > There is no question in the present case as to the extent of the property interest conveyed by HUD to plaintiff, but merely as to the rights and obligations of the parties under a contract with the federal government. Such contracts are normally governed by a uniform federal law and not by the particular laws of the states where they are made or per-

---

**3.** The Illinois Dwelling Unit Installment Contract Act provides that:

> any installment contract for the sale of a dwelling structure shall be voidable at the election of the buyer unless there is attached to the contract or incorporated therein a certificate of compliance, or in the absence of such a certificate (i) an express written warranty that no notice from any city, village or other governmental authority of a dwelling Code violation which existed in the dwelling structure before the installment contract was executed had been received by the contract seller, his principal or his agent within 10 years of the date of execution of the installment contract, or, (ii) if any such notice of violation had been received, a list of all such notices so received with a detailed statement of all violations referred to in such notice. The requirements of this section cannot be waived by the buyer or seller.

765 Ill. Comp. Stat. 75/2 (West 1999).

formed, except in most unusual circumstances.

Plaintiff also contends that the government breached the Installment Contract he entered into with the federal government by being unable to deliver 3252 West Carroll Street in the condition it was in at the time he entered the contract to purchase the property. Plaintiff maintains that this court should interpret the "as is" provision in the Installment Contract to mean that the plaintiff purchased the property in its condition at the time the parties entered the contract. Plaintiff maintains that, because the building has since been demolished, it obviously is no longer in the condition it was in at the time he entered the contract, and that the government, therefore, has breached the contract to purchase the property.

■■■ The interpretation of a government contract is a matter of law. *See Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990 (Fed. Cir.1996); *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 351 F.2d 972, 973 (1965). The language of the "contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances." *Hol–Gar Mfg. Corp. v. United States*, 351 F.2d at 975. Moreover, words are to be given their plain and ordinary meanings. *See Thanet Corp. v. United States*, 219 Ct.Cl. 75, 591 F.2d 629, 633 (1979). In addition, a court must give reasonable meaning to all parts of the contract and not render portions of the contract meaningless. *See Fortec Constructors v. United States*, 760 F.2d 1288, 1292 (Fed.Cir. 1985) (citing *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed.Cir. 1983)); *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434 (Fed.Cir.1996), (*reh'g denied*). To ascertain the intentions of the parties, the contract should be construed in its entirety "so as to harmonize and give meaning to all its provisions." *Thanet Corp. v. United States*, 591 F.2d at 633 (citing *ITT Arctic Servs., Inc. v. United States*, 207 Ct. Cl. 743, 524 F.2d 680, 684 (1975); *Northwest Marine Iron Works v. United States*, 203 Ct.Cl. 629, 493 F.2d 652, 657 (1974)).

■■ The plain language of the Installment Contract between the plaintiff and the government states that the contract is made subject to "[z]oning and building laws or ordinances" and that the plaintiff "shall indemnify and save harmless the Seller from all loss and liability that arise by reason of any and all obligations and liabilities existing or arising out of any [zoning and building laws or ordinances]." The Installment Contract also states that acceptance of the contract by plaintiff "shall constitute an acknowledgment by the Buyer that Buyer has inspected and examined the property, is satisfied with its condition and Buyer acknowledges that he/she is buying the property 'as is,'" and that plaintiff "assumes the risk of loss or damage to the buildings now situate."

When the government sells property with express disclaimers such as these, risk of loss is generally allocated to the buyer, and while such disclaimers may appear to place a harsh risk on the plaintiff, courts have generally upheld the shifting of the risk via contract. *See, e.g., Nematollahi v. United States*, 38 Fed.Cl. at 232–33 (holding that the contract at issue expressly allocated the risk of loss to the plaintiffs); *Wittmann v. United States*, 37 Fed.Cl. 239, 244 (1997) (in which the court suggested that, "if plaintiff considered the details of possible encumbrances to be crucial, plaintiff could have performed his own title search prior to the auction or taken such other steps necessary to clarify the status of any outstanding Deeds of Trust."); *Morris v. United States*, 33 Fed.Cl. 733, 745 (1995) ("Generally the Court of Claims has not allowed rescission of real estate purchase contracts for alleged misrepresentation where any warranty was expressly disclaimed."); *Commodities Recovery Corp. v. United States*, 34 Fed.Cl. 282, 292 (1995) (in which the court suggested that, "It would not be logical for the government to limit its liability with respect to delivered merchandise, and have the language of the notice of sale not apply to merchandise which is undeliverable."); *Levy v. United States*, 10 Cl.Ct. 602, 613 (1986) (in which the court noted that, "The record contains no indication, however, that plaintiffs attempted to inspect the county land records, which are public records open to view, at any time prior to or specifi-

cally on the day of the sale.... In light of plaintiffs' lack of reasonable prudence in the face of the disclaimer that the property at issue was being sold 'as is' and without warranty or guarantee, the court concludes that, even looking at the facts in a light most favorable to them, plaintiffs have not stated a claim upon which relief can be granted with respect to the encroachment."); *Pia v. United States,* 7 Cl.Ct. 208, 211 (1985), *aff'd,* 818 F.2d 876 (Fed.Cir.1987) (the lower court distinguished between knowledge of a defect available only to the government and knowledge also available to the contractor by stating, "In the cited cases [by the plaintiff] the government was liable for breach of contract because it failed to disclose information, held to be in its possession, which the contractor could not obtain elsewhere. In this case, knowledge of the outstanding lien was not available only to the government."); *see also Collins v. United States,* 209 Ct.Cl. 413, 420–21, 532 F.2d 1344 (1976) ("Ignorance is never sufficient to constitute a ground of relief if it appears that the requisite knowledge might have been obtained by reasonable diligence. *United States v. Ames,* 99 U.S. 35, 47, 25 L.Ed. 295 (1878). He who averts knowledge to himself cannot later claim lack of knowledge."). As one federal appellate court previously stated:

> Buyers of such surplus property know perfectly well that there is always the chance of buying property that may turn out to be little value, or may develop into a great bargain with a huge windfall of profit. Accordingly, the government very properly has protected itself by formulating its contract for the sale of such surplus property so as to shift the risk from itself to the buyer. As Professor Corbin tells us, a party to a contract may agree to assume certain risks that in the absence of agreement the law would not cast upon him.

*Dadourian Export Corp. v. United States,* 291 F.2d 178, 182 (2d Cir.1961).

In the instant case, the newspaper listing indicated that 3252 West Carroll Street had "[s]evere structural damage" and that the VA made "no warranty regarding property condition." It states that "Buyers are responsible for obtaining occupancy including

satisfaction of code violations." The newspaper advertisement also provided that the VA "assumes no liability for errors or omissions" in the advertisement. Plaintiff's offer to purchase acknowledged that the "VA makes no warranties, expressed or implied, with respect thereto." Like the provisions in the contract, these provisions expressly allocated the risk of any mistaken beliefs about the condition of the property to the plaintiff. Plaintiff's decision to submit an offer to purchase the property amounted to a voluntary act in which he must be held to have assumed the risk with respect to the accuracy and completeness of any descriptions of the property offered.

Moreover, in the face of the express disclaimers made by the government, and given the public availability of land records, the plaintiff should have sought, and could have discovered, the true condition of the property and the pending court proceedings by exercising reasonable diligence. A party cannot claim that he was misled into relying only on representations when he had the means by which, with reasonable diligence, he could have acquired the necessary knowledge. *See Levy v. United States,* 10 Cl.Ct. at 613; *Pia v. United States,* 7 Cl.Ct. at 211. The plaintiff does not contend that the VA made any affirmative statements which were false or misleading. Moreover, the plaintiff, Donnie Price, admits to knowing that the building at 3252 West Carroll Street had code violations after visiting the building. Therefore, his knowledge of the code violations is not at issue here. As to plaintiff's knowledge of the demolition proceedings, even though the VA did not reveal those ongoing proceedings to plaintiff, Mr. Price easily could have gained this knowledge by examining the publicly available land records. Indeed, the City recorded a notice of *lis pendens* regarding the demolition proceedings in the Circuit Court of Cook County on or about June 13, 1995, nearly three months before plaintiff offered to purchase the property. Plaintiff, therefore, could have discovered the existence of the demolition proceedings had he checked the land records.

This plaintiff also acknowledges that he has purchased property from the government

in the past. Plaintiff is the owner and landlord of a property he purchased from HUD. Plaintiff states that he conducted this earlier transaction with the assistance of an attorney. Plaintiff did not seek such assistance with the purchase of the property in dispute, and the record contains no indication that plaintiff attempted to inspect the land records. Although plaintiff is not required to seek assistance, as a reasonable purchaser, and especially in the face of the express disclaimers made by the government, he should have known to inspect the records of the property to determine whether the property was in any way encumbered.

The facts in *Levy v. United States*, 10 Cl.Ct. 602 (1986), are similar to the facts of the instant case. In *Levy*, a dispute arose from a sale of property by the General Services Administration (GSA) to the plaintiffs and a subsequent notice of encroachment filed in the Dade County, Florida land records. *Id.* at 604–05. The GSA advertised the property as, inter alia, "an oceanfront villa, nine bedrooms, seven baths, pool, and tennis court." *Id.* at 605. The advertisement also contained an "as is" provision.[4] *Id.* 605. The plaintiffs purchased the property and later learned that a notice of encroachment was recorded in the Dade County, Florida land records one day before the sale. *Id.* at 605. The notice of encroachment asserted that the improvements on the property encroached by approximately five feet onto the neighbor's property. *Id.* at 605. The plaintiffs in *Levy* contended that GSA knew of the encroachment, but failed to disclose this information, and, therefore, breached the contract for sale. *Id.* at 605. The plaintiffs sought damages for the diminution in value resulting from the encroachment. *Id.* at 605. The court concluded, as a matter of law, that plaintiffs were barred from obtaining relief. *Id.* at 613. The court explained that "[t]he gravamen of plaintiffs' claim is that GSA breached an agreement to sell them certain real property by failing to deliver a tennis court and the fixtures on the

property which were present at the time of the auction." *Id.* at 611. The court explained:

> Assuming, arguendo, that GSA knew of the encroachment, plaintiffs had a reasonable opportunity to find out about [the notice of encroachment], as well. Where a prospective bidder "can reasonably be expected to seek and obtain the facts elsewhere," *H.N. Bailey & Associates v. United States*, 196 Ct.Cl. 166, 178, 449 F.2d 376, 383 (1971), "he must also refer to other materials which are available and about which he is told by the contract documents." *Flippin Materials Co. v. United States*, 160 Ct.Cl. 357, 367, 312 F.2d 408, 414 (1963) (footnote omitted).

It is undisputed that the notice of encroachment was recorded at least 24 hours before the auction. The title search conducted for plaintiffs after the sale but prior to the closing revealed it in the chain of title. The record contains no indication, however, that plaintiffs attempted to inspect the county land records, which are public records open to view, at any time prior to or specifically on the day of the sale. Given the conditions under which the sale was to be finalized, as to which plaintiffs should have been fully cognizant, the disclosure in the materials accompanying the sale of the location of the relevant land records, the recordation of the notice of encroachment, and plaintiffs' failure to inspect those county records, the court finds that as a matter of law plaintiffs are barred from obtaining rescission or modification of their contract.

In light of plaintiffs' lack of reasonable prudence in the face of the disclaimer that the property at issue was being sold "as is" and without warranty or guarantee, the court concludes that, even looking at the facts in a light most favorable to them, plaintiffs have not stated a claim upon which relief can be granted with respect to the encroachment.

---

4. The advertisement in *Levy* stated that:
 The property is offered for sale and will be sold "As Is" and "Where Is" without representation, warranty or guaranty as to quantity, quality, character, condition, size, or kind, or that the same is in condition or fit to be used for the purpose for which intended, and no claim for any allowance or deduction upon such grounds will be considered after the auction.
 *Levy v. United States*, 10 Cl.Ct. at 605.

*Levy v. United States*, 10 Cl.Ct. at 612–13 (citations omitted) (footnotes omitted). In sum, the plaintiffs in *Levy* assumed the risk of loss for failing to exercise reasonable diligence to check the title of the property and, therefore, failed to state a claim upon which relief could be granted.

The court does not condone the VA's casual responses to the lawsuit brought by the City of Chicago, which resulted in a default judgment and demolition of the property. Nor does the court condone the absence of any notice of the pending lawsuit to the plaintiff by the VA during the contract negotiations. Under the facts of this case and existing precedent, however, the plaintiff cannot now shift the blame to the government for failing to deliver 3252 West Carroll Street in the condition it was in at the time he entered the contract to purchase the property, especially given the unambiguous nature of the disclaimers in the contract at issue. The Installment Contract at issue unambiguously states that plaintiff "shall indemnify and save harmless the Seller from *all loss* ... that arise[s] by reason of any and all obligations and liabilities *existing or arising out of any [zoning and building laws or ordinances]*," and further states that plaintiff "assumes the *risk of loss* or damage to the buildings now situate." (Emphasis added). Thus, plaintiff bore the risk of loss on the property. Furthermore, the information regarding the demolition proceedings filed by the City of Chicago were publicly available, and a search of those realty records, which plaintiff failed to do, would have disclosed the ongoing demolition proceedings and the status of those proceedings.

The plaintiff, however, maintains that the VA had a duty to inform him that there were code violations and ongoing demolition proceedings against 3252 West Carroll Street. Plaintiff argues that there were generally three points in time that the government had a duty to inform him of the code violations and demolition proceedings. First, plaintiff contends that the government knew of the code violations and demolition proceedings before it advertised the property in the Chicago Tribune, and that the government, therefore, had a duty to disclose such knowledge in the advertisement. Second, plaintiff maintains that the government knew of the code violations and demolition proceedings before plaintiff signed the Installment Contract, and that the government, therefore, had a duty to disclose such knowledge to the plaintiff. Finally, plaintiff alleges that the government also should have disclosed the demolition proceedings after plaintiff signed the Installment Contract. In sum, plaintiff's claim appears to be that defendant violated an implied duty of good faith and fair dealing in the formation and performance of the Installment Contract.

 Every contract imposes a duty of good faith and fair dealing. *See Allstates Air Cargo, Inc. v. United States*, 42 Fed.Cl. 118, 124 (1998) ("The government correctly assumes that the implied duty of good faith and fair dealing applies in government contracts."); *Ebasco Servs., Inc. v. United States*, 37 Fed.Cl. 370, 382 (1997) ("Every government contract contains an implied covenant of good faith and fair dealing."). *Allstates Air Cargo, Inc. v. United States*, 42 Fed.Cl. 118, 124 (1998) ("The implied obligation of good faith and fair dealing must attach to a specific substantive obligation, mutually assented to by the parties.") (quoting *State of Alaska v. United States*, 35 Fed.Cl. 685, 704 (1996), *aff'd*, 119 F.3d 16 (Fed.Cir.1997) (table), *cert. denied*, 522 U.S. 1108, 118 S.Ct. 1035, 140 L.Ed.2d 102 (1998)). Government officials are presumed to act in good faith in the discharge of their duties. *See Morris v. United States*, 39 Fed.Cl. 7, 14 (1997) (table), *aff'd*, 178 F.3d 1307 (Fed.Cir. 1998). The level of proof required to overcome this presumption has been described as requiring evidence of specific intent to injure the plaintiff and that a plaintiff must "present 'clear and strong proof of specific acts of bad faith,' demonstrating that a Government official acted with malice or a specific intent to injure the plaintiff." *Morris v. United States*, 39 Fed.Cl. 7, 15 (1997) (quoting *Morris v. United States*, 33 Fed.Cl. 733, 752 (1995) (citing *Torncello v. United States*, 681 F.2d 756, 771, 231 Ct.Cl. 20 (1982); *Continental Collection & Disposal, Inc. v. United States*, 29 Fed.Cl. 644, 652 (1993))), *aff'd*, 178 F.3d 1307 (Fed.Cir.1998) (table).

■ Plaintiff makes one principal allegation of bad faith. Plaintiff maintains that the government had a duty to inform him that there were code violations and ongoing demolition proceedings against 3252 West Carroll Street before and after plaintiff signed the contract. In promoting his argument, the plaintiff overlooks the requirement that "[t]he implied obligation of good faith and fair dealing must attach to a specific substantive obligation, mutually assented to by the parties." *Allstates Air Cargo, Inc. v. United States,* 42 Fed.Cl. at 124 (quoting *State of Alaska v. United States,* 35 Fed.Cl. 685, 704 (1996), *aff'd,* 119 F.3d 16, *cert. denied,* 522 U.S. 1108, 118 S.Ct. 1035, 140 L.Ed.2d 102). Plaintiff would have the implied obligation of good faith and fair dealing create an express obligation on the part of the government to inform the plaintiff that there were code violations and ongoing demolition proceedings against 3252 West Carroll Street. There is no such express substantive obligation in the contract. As previously discussed, there are express provisions in the contract to the contrary, shifting the risk to the plaintiff regarding such matters. Thus, plaintiff cannot now shift the blame to the government for not informing him of the code violations and demolition proceedings.

Plaintiff has failed to present enough evidence to prove, by a preponderance, that the government breached its obligation of good faith and fair dealing, in order to overcome the presumption afforded the government. Plaintiff admits in the joint stipulation of facts that he "did not search any public record regarding 3252 West Carroll Street or request any information regarding 3252 West Carroll Street." Moreover, the facts as alleged by the plaintiff do not demonstrate, nor does the plaintiff contend, that the government intentionally concealed the code violations, which plaintiff admits he knew about, or the ongoing demolition proceedings from plaintiff. Therefore, in light of all the foregoing, we hold that based on the record before the court, the government did not breach its implied obligation of good faith and fair dealing.

If, however, plaintiff is making a claim for tortious, negligent misrepresentation or negligent failure to disclose on the part of a government official, this court would not have jurisdiction.[5] It is clearly established that the United States Court of Federal Claims lacks jurisdiction over tort claims. *See Berdick v. United States,* 222 Ct.Cl. 94, 100, 612 F.2d 533, 536 (Ct.Cl.1979). The Tucker Act expressly excludes tort claims from the jurisdiction of the United States Court of Federal Claims. 28 U.S.C. § 1491(a)(1) (1994); *see Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997) *(reh'g denied); Golden Pacific Bancorp. v. United States,* 15 F.3d 1066, 1069 n. 8 (Fed. Cir.1994), *cert. denied,* 513 U.S. 961, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994); *Shearin v. United States,* 992 F.2d 1195, 1197 (Fed.Cir. 1993); *Edwards v. United States,* 19 Cl.Ct. 663, 669 (1990). In reviewing the jurisdiction of this court, the United States Court of Appeals for the Federal Circuit has stated:

> It is well settled that the United States Court of Federal Claims lacks—and its predecessor the United States Claims Court lacked—jurisdiction to entertain tort claims. The Tucker Act expressly provides that the "United States Court of Federal Claims shall have jurisdiction ... in cases *not* sounding in tort." 28 U.S.C. § 1491(a)(1) (1988) (emphasis added), *as amended by* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506; *see Aetna Casualty and Surety Co. v. United States,* 655 F.2d 1047, 1059, 228 Ct.Cl. 146 (1981).

*Shearin v. United States,* 992 F.2d at 1197.

Although the facts of this case are extremely unfortunate, the law does not support plaintiff's claim for relief. It would appear counterproductive that when government officials promote a program to improve neighborhoods, and transfer property the VA acquired through foreclosure to citizens willing to rehabilitate the property, that they

---

5. Nor is it likely that the plaintiff could succeed based on the facts of the instant case. The facts before the court would appear not to support a finding that the plaintiff was justified in relying on any alleged misrepresentation or failure to disclose on the part of the government officials, given the express terms of the Installment Contract and the publicly available land records.

also would not assist those citizens to succeed. From a common sense perspective, one should be able to expect that the government officials would have revealed the ongoing demolition proceedings of which they had been clearly informed and to which they had responded. Generally speaking, the government should not allow default judgments, especially on property the VA had recently transferred by Installment Contract on November 6, 1995. However, on or about November 2, 1995, the VA did notify the City that the property had been transferred to the plaintiff before the default. The demolition order was not entered until on or about March 14, 1996. In the joint stipulation of facts submitted to the court, Ronald H. Rogala, an Assistant Director of the VA regional office which handled the real estate transaction at issue, stated that, "based upon his 27.5 years of experience in the real estate business, it would not have been difficult form [sic] Mr. Price to get the demolition order involving 3252 West Carroll Street lifted. Moreover, Mr. Rogala stated that Mr. Price could have recorded his interest in 3252 West Carroll Street even though he purchased the property by installment contract." In the instant case, plaintiff Donnie Price failed to search the real estate records prior to or after entering into the Installment Contract to purchase the property at issue, or to record his interests in the property once he entered into the Installment Contract, and bears the risk of loss under the terms of the Installment Contract.

## CONCLUSION

Based on the above discussion, the facts presented to the court, and the controlling precedent, the plaintiff's motion for summary judgment is **DENIED** and the defendant's cross-motion for summary judgment is **GRANTED.**

**IT IS SO ORDERED**