**DETROIT HOUSING CORPORATION, a Michigan corporation, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 01–38C.

United States Court of Federal Claims.

Feb. 27, 2003.

and represented that the property could be repaired upon receipt of city permits.

The matter is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") or for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4). In the alternative, defendant moves for summary judgment pursuant to RCFC 56. For the reasons stated below, defendant's motion for summary judgment is GRANTED.

## Background

### Facts

On or about October 1997, the Secretary of HUD ("Secretary") acquired property listed at 90 W. Milton, Hazel Park, Michigan ("90 W. Milton").[1] On April 24, 1998, the Secretary listed and advertised the property for sale. The advertisement indicated that the property was sold "AS–IS" and notified buyers that all properties listed "may contain code violations." App. to Def.'s Mot. to Dismiss (Def.'s App.) at 1. On its face, the advertisement was a solicitation for offers or bids. On May 4, 1998, Detroit Housing offered to purchase 90 W. Milton for $22,369.00 by submitting and signing a "Sales Contract". HUD signed the contract on May 6, 1998. The sales contract stated that the buyer "is responsible for satisfying itself as to the full condition of the property" and "Seller will not perform repairs after acceptance of this contract." Def.'s App. at 2. It also contained several "Conditions of Sale," which stated, in part:

B. Seller makes no representations or warranties concerning the condition of the property, including but not limited to mechanical systems, dry basement, foundation, structural, or compliance with code, zoning or building requirements and will make no repairs to the property after execution of this contract.... Purchaser acknowledges responsibility for taking such action as it believes necessary to satisfy

Bruce G. Hartrick, Troy, Michigan, attorney of record for plaintiff.

Wanda Rubianes–Collazo, Department of Justice, Washington, D.C., with whom was Acting Assistant Attorney General Stuart E. Schiffer, for defendant. David M. Cohen, Director, and Robert E. Kirschman, Assistant Director.

## *OPINION*

MEROW, Senior Judge.

Plaintiff, Detroit Housing Corp. ("Detroit Housing"), seeks damages for breach of contract based on its claim that defendant made material misrepresentations regarding property purchased from the United States Department of Housing and Urban Development ("HUD"). Plaintiff claims that defendant failed to disclose a demolition order

---

1. The Secretary of the Department of Housing and Urban Development ("Secretary") is authorized by law to insure eligible mortgages against default. In the event of a default, the insured lender receives the proceeds of mortgage insurance, upon delivery of title to the property. The Secretary then markets the property. *See* 12 U.S.C. § 1200 et. seq.; 24 C.F.R. Parts 200 and 203.

itself that the property is in a condition acceptable to it, of laws, regulations and ordinances affecting the property, and agrees to accept the property in the condition existing on the date of this contract. It is important for Purchaser to have a home inspection performed on the property in order to identify any possible defects.

. . .

E. Purchaser may not perform repairs nor take possession of the property until sale is closed. Risk of loss or damage is assumed by Seller until sale is closed, unless Purchaser takes possession of property prior thereto, in which case state law shall apply.

. . .

P. This contract contains the final and entire agreement between Purchaser and Seller and they shall not be bound by any terms, conditions, statements, or representations, oral or written, not contained in this contract.

Def.'s App. at 3.

In a letter to plaintiff dated May 14, 1998, prior to closing, HUD stated that "This property was sold in an as-is condition. You may not occupy the property nor cause it to be occupied prior to closing and receipt of a certificate of approval/occupancy from the local building department. Permits must be obtained for repair work as required by the city. No repair work can be initiated prior to the sale closing." Letter from Cheryl A. Martin, Realty Specialist, HUD, to All Housing Services, Inc., (annexed to Pl.'s Resp.). The sale of the property was closed on June 11, 1998. Pl.'s Compl. ¶ 11. On June 11, 1998, HUD wrote to the Detroit Edison Company, stating "The above identified property and purchaser are cleared for reinstallation of electrical service. The purchaser must have a copy of the closing statement and proper identification before the installation of service." Letter from Cynthia Nardecchia, HUD, to Detroit Edison Company. Def.'s App. at 5.

After the closing, plaintiff sought to have Detroit Edison provide electrical power to the property but learned that the city had issued a demolition order dated July 17, 1997. As a result of the demolition order,

Detroit Housing was unable to obtain electrical, gas, or water service for 90 W. Milton. The city also denied plaintiff's requests for permits for repairs to the roof, furnace replacement, and new siding. The house located at 90 W. Milton was in fact demolished and the property is now vacant.

## Discussion

### Standard of Review

### Motion to Dismiss Pursuant to RCFC 12(b)(1)

In considering a motion to dismiss, the burden of establishing jurisdiction is on the plaintiff. *See McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir. 1991); *Reynolds v. Army & Air Force Exch. Svc.*, 846 F.2d 746, 748 (Fed.Cir.1988). In order to evaluate the merits of defendant's motion asserting lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the allegations of the complaint must be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, if the defendant challenges the truth of the jurisdictional facts alleged in the complaint, the court may expand its consideration of evidence beyond the pleadings. *Bergman v. United States*, 28 Fed.Cl. 580, 584 (1993) (holding that the court may consider evidentiary matters outside the pleadings in deciding motion pursuant to RCFC 12(b)(1)). "The [C]ourt should look beyond the pleadings and decide for itself those facts, even in dispute, which are necessary for a determination of [the] jurisdictional merits." *Pride v. United States*, 40 Fed.Cl. 730, 732 (1998) (quoting *Farmers Grain v. United States*, 29 Fed.Cl. 684, 686 (1993)); *see also Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed.Cir.1993) (when jurisdiction is at issue, the Court is not limited to the pleadings).

### Motion to Dismiss Pursuant to RCFC 12(b)(4)

In the event that jurisdiction is present, defendant seeks dismissal of plaintiff's complaint for failure to state a claim, pursuant to RCFC 12(b)(4). This court may not dismiss

a complaint for failure to state a cause of action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997). This court "must accept plaintiff's factual allegations in the complaint as true, drawing all inferences in favor of the plaintiff." *Ponder v. United States*, 117 F.3d 549, 552 (Fed.Cir.1997). Therefore, the court must dismiss pursuant to RCFC 12(b)(4), if accepting all Detroit Housing's allegations are taken to be true, the complaint still does not state a claim for which the law permits recovery. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1355 (2d ed.1990).

However, a motion to dismiss for failure to state a claim shall be treated as one for summary judgment if matters outside the pleading are presented to and not excluded by the court. Therefore, because matters outside the pleadings were presented and not excluded by this court, defendant's motion to dismiss shall be treated as a RCFC 56 motion for summary judgment.

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one "that might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden is on the movant for summary judgment to show "that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548).

### Contractual Misrepresentation

■ Under the Tucker Act, 28 U.S.C. § 1491(a), the court has jurisdiction over "any claim against the United States founded upon ... any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." It is well established that "Congress has always withheld from this court and from the Tucker Act original jurisdiction over tort claims against the government." *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1010 (1967); *Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir.1997). Furthermore, "claims based on negligent misrepresentation, wrongful inducement, or the careless performance of a duty allegedly owed, are claims sounding in tort." *Somali Dev. Bank v. United States*, 205 Ct.Cl. 741, 508 F.2d 817, 821 (Ct.Cl.1974). Similarly, the court lacks jurisdiction over claims based on fraud. *Brown*, 105 F.3d at 623; *Englert v. United States*, 38 Fed.Cl. 366, 373 (1997).

■ The court also lacks jurisdiction over plaintiff's claim based on innocent misrepresentation under Michigan law.[2] The Supreme Court has established that "[w]hether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.'" *United States v. Kimbell Foods*, 440 U.S. 715, 728, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) (quoting *United States v. Standard Oil Co.*, 332 U.S. 301, 310, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947)). In the context of contracts between the federal government and its citizens, the courts have opted for a uniform federal law of contracts as the federal rule of decision, to avoid the uncertainty of conflicting states laws. *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366–67, 63 S.Ct. 573, 87 L.Ed. 838 (1943). "Such contracts are normally governed by a uniform federal law and not by the particular laws of the states where they are made or performed, except in most unusual circumstances." *Pinewood Realty Ltd. P'ship v. United States*, 223 Ct.Cl. 98, 102, 617 F.2d 211, 213–14 (1980). Thus, federal

---

**2.** *See United States Fid. & Guar. Co. v. Black,* 412 Mich. 99, 313 N.W.2d 77 (1981).

law, and not the law of Michigan, applies to the instant case.

■ However, "the court has repeatedly asserted jurisdiction over claims based on 'tortious breach' of a government contract." *Summit Contractors, Inc. v. United States,* 22 Cl.Ct. 54, 56 (1990); *L'Efant Plaza Props. v. United States,* 227 Ct.Cl. 1, 645 F.2d 886, 892 (1981). The court has held that "positive representations . . . amounted to a warranty, and established a predicate for possible action for breach of contract when it was later discovered that defendant's representations . . . were untrue." *Morrison–Knudsen Co. v. United States,* 170 Ct.Cl. 712, 718, 345 F.2d 535, 539 (1965). Thus, a claim for "tortious breach of contract is not a tort independent of the contract so as to preclude an action under the Tucker Act." *Burtt v. United States,* 176 Ct.Cl. 310, 314, 1966 WL 8878 (1966).

■ In order for the court to maintain jurisdiction, there "must be a direct connection between the government's contractual obligations and the alleged tortious conduct." *Mega Constr. Co. v. United States,* 29 Fed. Cl. 396, 478 (1993); *H.H.O., Inc. v. United States,* 7 Cl.Ct. 703, 706 (1985). It is not enough that the conduct is merely related in a general sense to the contractual relationship between the parties. *Mega,* 29 Fed.Cl. at 478. In this case, plaintiff argues that HUD breached its contractual obligation to disclose the demolition order and misrepresented that permits to repair the property would be granted and that the property could be restored for occupancy or sale. Essentially, plaintiff claims that HUD failed to deliver the property and the house located on the property at the time it entered into the contract. Thus, the court has jurisdiction over plaintiff's contract claim. *See Price v. United States,* 46 Fed.Cl. 640 (2000), *aff'd,* 10 Fed.Appx. 801, 2001 WL 528120 (Fed.Cir. May 2, 2001); *Morris v. United States,* 33 Fed.Cl. 733, 744 (1995); *Summit Timber Co. v. United States,* 230 Ct.Cl. 434, 677 F.2d 852 (1982).

■ In order for plaintiff to recover under its claim for contractual misrepresentation, it must show that:

(1) defendant made a representation; (2) the misrepresentation was either fraudulent or material; (3) the misrepresentation induced plaintiff to enter into the contract; and (4) plaintiff was justified in relying on the misrepresentation. Restatement § 164.

*Nematollahi v. United States,* 38 Fed.Cl. 224, 231 (1997) (citing *Morris,* 33 Fed.Cl. at 745); Restatement (Second) of Contracts § 164 (1981).

"Misrepresentation occurs when the government misleads a contractor by a negligently untrue representation of fact, or fails to disclose information that it has a duty to disclose." *Meyers Cos., Inc. v. United States,* 41 Fed.Cl. 303, 311 (1998) (quoting *John Massman Contracting Co. v. United States,* 23 Cl.Ct. 24, 31 (1991)). "A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." *T Brown Constructors, Inc. v. Pena,* 132 F.3d 724, 729 (Fed.Cir.1998). An "intent to mislead is not an essential element of actionable misrepresentation in the breach of contract context." *Womack v. United States,* 182 Ct. Cl. 399, 411–412, 389 F.2d 793, 800 (1968) (citing *Morrison–Knudsen,* 170 Ct.Cl. at 719, 345 F.2d 535).

■ According to plaintiff's complaint, defendant's misrepresentation "was that repair work could be done and that it would be possible to get permits to do the required repair work." Pl.'s Compl. ¶ 11. It alleges that defendant made this representation in the contract as well as in a May 14, 1998 letter which stated, in part: "You may not occupy the property nor cause it to be occupied prior to closing and receipt of a certificate of approval/occupancy from the local building department. Permits must be obtained for repair work as required by the city. No repair work can be initiated prior to the sale closing." Letter from Cheryl A. Martin, Realty Specialist, HUD, to All Housing Services, Inc., (annexed to Pl.'s Resp.). Additionally, plaintiff contends that defendant again made this representation in a June 11, 1998 letter to Detroit Edison Company, stating "The above identified property

and purchaser are cleared for reinstallation of electrical service." Letter from Cynthia Nardecchia, HUD, to Detroit Edison Company. (Def.'s App. at 5). Furthermore, plaintiff alleges that it reasonably relied on defendant's representations when it agreed to purchase the property and suffered losses as a direct and proximate result.

Defendant counters that "the plain language of the contract documents makes clear that the Government at no time represented that Detroit Housing would be able to obtain permits to do repair work and make the structure habitable." Def.'s Mot. to Dismiss at 13. Furthermore, defendant contends that Detroit Housing was not justified in relying on any alleged representations because it failed to exercise reasonable due diligence by conducting its own check of the publicly available land records. Plaintiff counters that summary judgment is inappropriate because there are genuine issues of material fact as to whether defendant represented that the property could be restored for occupancy by obtaining the proper permits.

In *Price*, 46 Fed.Cl. at 641, the court considered facts similar to those presented in the instant case. In that case, the plaintiff purchased property from the Department of Veteran Affairs ("VA"). The property was listed "AS–IS—NO FURTHER REPAIRS ARE TO BE DONE BY VA" and also stated that "VA makes no warranty regarding property condition . . . ." *Id.* at 641. The contract was made subject to applicable "zoning and business laws or ordinances" and the purchaser "assumed the risk of loss or damage to the buildings now situate . . . in or upon said property by fire, casualty, or other happening." *Id.* at 643. The VA sold the property to the plaintiff without disclosing the demolition order filed against the property. The plaintiff alleged breach of the duty of good faith and fair duty based on the failure to disclose the ongoing demolition proceedings filed against the property or providing notice of building code violations. The plaintiff also alleged breach of contract by failing to deliver the property in the condition it was in at the time of purchase. The court held that:

When the government sells property with express disclaimers such as these, risk of loss is generally allocated to the buyer, and while such disclaimers may appear to place a harsh risk on plaintiff, courts have generally upheld the shifting of the risk via contract.

46 Fed.Cl. at 647 (citing *Nematollahi,* 38 Fed.Cl. at 232–3; *Wittmann v. United States,* 37 Fed.Cl. 239, 244 (1997); *Morris,* 33 Fed.Cl. at 745; *Commodities Recovery Corp. v. United States,* 34 Fed.Cl. 282, 292 (1995); *Levy v. United States,* 10 Cl.Ct. 602, 613 (1986); *Pia v. United States,* 7 Cl.Ct. 208, 211 (1985), *aff'd,* 818 F.2d 876 (Fed.Cir. 1987)).

The facts of this case are sufficiently similar. The property at issue, 90 W. Milton was advertised "AS–IS" and all potential buyers were put on notice that the property could contain code violations. Def.'s App. at 1. The sales contract included a "Certification of Purchaser" stating that purchaser "is responsible for satisfying itself as to the full condition of the property; and . . . that Seller will not perform repairs after acceptance of this contract." Def.'s App. at 2. The conditions of sale clearly stated that "Seller makes no representations or warranties concerning the condition of the property, including but not limited to . . . compliance with code, zoning, or building requirements . . . ." and that the plaintiff "acknowledges responsibility for taking such action as it believes necessary to satisfy itself that the property is in a condition acceptable to it, of laws, regulations and ordinances affecting the property . . . ." Def.'s App. at 3. Under the contract, the "[r]isk of loss is assumed by Seller until sale is closed, unless Purchaser takes possession of the property prior thereto . . . ." Def.'s App. at 3.

The contract did not make any representation that permits would be granted or that the property could be repaired for occupancy. Defendant expressly disclaimed any warranty as to whether the property was habitable or that plaintiff could obtain the necessary permits to repair the building. Plaintiff assumed responsibility to investigate whether there were any conditions such as a demolition order affecting 90 W. Milton.

Therefore, the risk of loss was shifted to Detroit Housing. Thus, given the broad disclaimer of representation or warranty it was unreasonable for plaintiff to rely upon any alleged representation that permits would be granted. *See Nematollahi*, 38 Fed.Cl. at 233 ("In the face of these sweeping disclaimers of representations or warranties regarding the condition of the property, the plaintiffs were unjustified in relying on any representations about the quality of the well water."); *Pia*, 7 Cl.Ct. at 211 ("When the Government sells property with such express disclaimers, the risk is on the purchaser.").

Furthermore, the additional letters made no representations that the permits would actually be granted. HUD, lacking authority to grant the permits, merely directed plaintiff to contact the local building department. In fact, the letter informed plaintiff that "closing must occur within 30 days of the acceptance of an offer." Letter from Cheryl A. Martin, Realty Specialist, HUD, to All Housing Services, Inc. (annexed to Pl.'s Resp.). Thus, the letter notified plaintiff that it had 30 days from the date of acceptance to exercise reasonable diligence by taking action to satisfy itself that it was satisfied with the property. Detroit Housing was not justified in relying on this letter because it warned plaintiff that it had 30 days to contact the local authorities to determine whether permits would be granted. This court has previously denied recovery "to contractors who sought to rely upon an alleged misrepresentation in part of the contract even though they were guided by contract documents to sources which would have revealed the whole truth." *Flippin Materials Co. v. United States*, 160 Ct.Cl. 357, 365, 312 F.2d 408, 414 (1963).

Plaintiff was not justified in relying on any alleged representation contained in the additional letters because they were not part of the contract. The conditions of sale stated that the contract "contains the final and entire agreement between Purchaser and Seller and they shall not be bound by any terms, conditions, statements, or representations, oral or written, not contained in this contract." Def.'s App. at 3. It is clear that the government "will not be bound by the repre-

sentations of its agent unless that agent had the actual authority to make such representations." *Nematollahi*, 38 Fed.Cl. at 231 (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947)). The contract did not provide Ms. Martin or Ms. Nardecchia the authority to alter the express terms of the contact. Thus, it was unreasonable and unjustifiable for plaintiff to rely upon any written statements regarding the condition of the property not contained in the contract. *See Nematollahi*, 38 Fed.Cl. at 231–33; *Pia*, 7 Cl.Ct. at 211–12.

Plaintiff argues that the alleged representations made by defendant do not fall within the scope of the disclaimers because the disclaimers only address possible defects in the property. Plaintiff claims that the disclaimers do not protect against representations the structure could be repaired or the failure to disclose that the property had been slated for demolition. However, the contract did state that "Purchaser acknowledges responsibility for taking such action as it believes necessary to satisfy itself that the property is in a condition acceptable to it, of laws, regulations, and ordinances affecting the property . . . ." Def.'s App. at 3. Thus, when plaintiff accepted the property, it assumed responsibility for investigating whether there were anything such as a demolition order affecting the property. Assuming defendant had knowledge of the demolition order, plaintiff also could have obtained this information by exercising due diligence by contacting the local building department. The court has established that a prospective bidder is unjustified in relying upon a representation "when he had the means by which, with reasonable diligence, he could have acquired the necessary knowledge." *Price*, 46 Fed.Cl. at 648 (citing *Levy*, 10 Cl.Ct. at 613; *Pia*, 7 Cl.Ct. at 211).

In *Levy*, 10 Cl.Ct. at 612–13, the purchaser filed a breach of contract claim alleging that the General Services Administration ("GSA") failed to disclose a notice of encroachment recorded on the property. The court denied recovery because the plaintiff failed to inspect the county land records. The court concluded that "[i]n light of plaintiff's lack of reasonable prudence in the face of the dis-

claimer that the property at issue was being sold 'as is' and without warranty or guarantee, ... plaintiffs have not stated a claim upon which relief has been granted." *Id.* at 613. The court held that:

> Where a prospective bidder "can reasonably be expected to seek and obtain the facts elsewhere," *H.N. Bailey & Assoc. v. United States,* 196 Ct.Cl. 166, 178, 449 F.2d 376, 383 (1971), "he must also refer to other materials which are available and about which he is told by the other contract documents." *Flippin Materials Co. v. United States,* 160 Ct.Cl. 357, 367, 312 F.2d 408, 414 (1963) (footnote omitted).

*Levy,* 10 Cl.Ct. at 612–13.

The record contains no indication that Detroit Housing attempted to check the land records or contact the county clerk or register of deeds. It is clear that the demolition order was filed well before the property was listed for sale. The contract contained express disclaimers concerning the condition of the property. Plaintiff had ample opportunity to discover the demolition order by exercising reasonable diligence. Plaintiff has acknowledged that repairs were necessary before the structure would have been suitable for sale or occupancy. Pl.'s Compl. ¶ 20–23. Thus, plaintiff was on notice that it should have taken action to assure itself that the permits would be granted. As stated in the sales contract, Detroit Housing disclosed that it was purchasing the property as an "investor." [3] Def.'s App. at 2. As an investor who planned to re-sell the property, it would have been reasonable to have sought the assistance of an attorney for this transaction and to have inspected all available records of the property. However, there is no evidence that plaintiff made any attempt to contact the local building department or search the publicly available land records. In *Price,* 46 Fed.Cl. at 648, the court made it clear that "as to plaintiff's knowledge of the demolition proceedings, even though the VA did not reveal those ongoing proceedings to plaintiff, Mr. Price easily could have

gained knowledge by examining the publicly available land records."

### Duty of Good Faith and Fair Dealing

Although plaintiff does not explicitly allege that defendant violated an implied duty of good faith and fair dealing, it does contend that defendant failed to disclose that the property had been condemned and that a demolition order had been filed against the property. Plaintiff argues that defendant had knowledge of the demolition order before it advertised the property for sale and should have disclosed this information in the advertisement. Plaintiff also maintains that defendant should have disclosed its knowledge before and after the sales contract was signed.

The duty of good faith and fair dealing is implied in every government contract. *Centex Corp. v. United States,* 49 Fed.Cl. 691, 708 (2001). All government officials are presumed to act in good faith in the discharge of their duties. *Spezzaferro v. Fed. Aviation Admin.,* 807 F.2d 169, 173 (Fed.Cir.1986). To satisfy the high burden of proof, plaintiff must present "well-nigh irrefragable proof" that the government acted in bad faith. *Torncello v. United States,* 231 Ct.Cl. 20, 47, 681 F.2d 756, 771 (1982). Plaintiff must demonstrate "facts constituting malice or, in other words, a specific intent to injure the plaintiff on the part of a government official." *Morris,* 33 Fed.Cl. at 752 (citing *Torncello,* 681 F.2d at 771; *Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 543 F.2d 1298, 1302 (1976)). However, the implied obligation "must attach to a specific substantive obligation, mutually assented to by the parties." *Allstates Air Cargo, Inc. v. United States,* 42 Fed.Cl. 118, 124 (1998) (quoting *Alaska v. United States,* 35 Fed.Cl. 685, 704 (1996), *aff'd,* 119 F.3d 16 (Fed.Cir. 1997)). The contract does not contain any express obligation requiring defendant to disclose the demolition order. Instead, it contains several express provisions that place the risk of loss on plaintiff. The record does not demonstrate that defendant intentionally concealed the demolition order, which plaintiff could have discovered. Therefore, defen-

---

**3.** The other options included: owner-occupant, nonprofit organization, public housing agency, and other government agency.

dant did not breach its implied obligation of good faith and fair dealing. *Price,* 46 Fed.Cl. at 650–51 (denying claim for breach of good faith and fair dealing because there was no obligation in the contract to disclose the demolition proceedings.)

## CONCLUSION

Accordingly, it is **ORDERED:**

(1) Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is DE-NIED;

(2) Defendant's Motion to Dismiss for Failure to State a Claim is DENIED;

(3) Defendant's Motion for Summary Judgment is **GRANTED;**

(4) Final Judgment shall be entered **DIS-MISSING** the Complaint, with **NO COSTS** assessed.